THE CITY OF CHICAGO, Plaintiff-Appellant, v. TELEGRAPH PROPERTIES LIMITED PARTNERSHIP *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—02—2869

Opinion filed December 10, 2003.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Meera Werth, Assistant Corporation Counsel, of counsel), for appellant.

Robinson, Curley & Clayton, P.C., of Chicago (C. Philip Curley and Darlene M. Oliver, of counsel), for appellees.

JUSTICE KARNEZIS delivered the opinion of the court:

In this interlocutory appeal, plaintiff, the City of Chicago (City), appeals from an order of the circuit court dismissing defendants Andrew A. Jahelka, Richard O. Nichols and Leon A. Greenblatt III from the cause of action. The question presented in this case is whether the allegations in the City's complaint were factually sufficient to state a cause of action against defendants. We affirm.

This cause of action arose as a result of the deteriorating exterior of a commercial building (the building) commonly known as 188-194 West Randolph Street and 151-169 North Wells Street in Chicago.[1] The building had numerous cracked windows and much of the exterior

---

[1] The building is also identified as bearing permanent tax identification number 17—09—433—001—0000.

stone and terra cotta was in need of repair. As a result of the building's dangerous condition, the City erected a "canopy" to prevent pieces of the exterior from falling onto nearby sidewalks, streets and Chicago Transit Authority elevated tracks. The City filed suit to impose fines against the building's owners as well as to recover the costs of constructing the canopy, which totaled $3,200,667.

The City filed its third amended complaint on June 19, 2002, against defendants as well as the building's owner, Telegraph Properties Limited Partnership (TPLP) and TPLP's general partner, Telegraph Properties, Inc. (TPI). Shortly thereafter, TPI filed its suggestion of bankruptcy. The complaint alleged that defendants Jahelka, Nichols and Greenblatt III were, respectively, the president, treasurer and secretary of TPI, and each had a "substantial ownership interest" in both TPI and TPLP. The City alleged that because defendants were officers of TPI and were "substantial" owners in both TPI and TPLP, they could be held personally liable for the fines the City sought to impose and for the costs of constructing the canopy. The City's derivative theory of liability included allegations that defendants, as owners and officers of TPI, controlled the assets of TPI and TPLP, and through their control and management of those entities, deprived the building of the resources necessary to maintain it in a safe condition. The complaint also alleged various financial endeavors in which defendants engaged to show their "control" over the building's assets. Counts I through III of the four-count complaint alleged defendants were personally liable for the condition of the building pursuant to several sections of the Chicago Municipal Code. Count IV alleged defendants were personally liable under a theory of common law public nuisance.

Pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)), defendants moved to dismiss those allegations of the complaint that sought to hold them personally liable for the building's condition.[2] The circuit court granted the motion with prejudice, finding that the sections of the Chicago Municipal Code (Code) upon which the City relied did not impose liability on corporate individuals who were not directly responsible for the building code violations. The court noted that pursuant to the Code, liability could only be imposed upon owners, property managers, and those who were in possession or control of the property or those who collected rents for the building. The court further stated that because the complaint failed to allege that defendants owned the building or

---

[2]Defendants' motion was also brought pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)); however, those issues are not relevant to this appeal.

were responsible for the management or control of the building, the complaint failed to state a cause of action against defendants. The City now appeals from this ruling.

■ A motion to dismiss a complaint brought pursuant to section 2—615 of the Code of Civil Procedure tests the legal sufficiency of a pleading. *Universal Scrap Metals, Inc. v. J. Sandman & Sons, Inc.*, 337 Ill. App. 3d 501, 504 (2003). The court accepts as true all well-pleaded facts and the inferences that can reasonably be drawn from those facts. *Universal Scrap Metals*, 337 Ill. App. 3d at 504. The relevant inquiry is whether, when viewed in the light most favorable to the plaintiff, the allegations are sufficient to state a cause of action upon which relief can be granted. *Universal Scrap Metals*, 337 Ill. App. 3d at 504. Our review on appeal is *de novo*. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 583 (2000).

On appeal, the City first argues that counts I and II of the complaint stated a cause of action against defendants because the Code provisions impose liability upon corporate officers for violations for which they are directly responsible.

Count I of the complaint alleged in part:

"Pursuant to sections 13—196—03[6][3], 13—196—031, 13—12—020 and 1—4—090 of the Code, [defendants] were jointly and severally liable for the Code violations *** because they were at all relevant times owners and officers of TPI, beneficial owners of the premises, owner/agents of TPLP, and persons entitled to the control and direction of the management or disposition of the premises."

Count II alleged in part:

"Pursuant to Sections 13—196—03[6], 13—196—031, 13—12—020 and 1—4—090 of the Code, [defendants] are jointly and severally liable for the costs incurred by the City as a result of the Code violations *** because they were at all relevant times owners and officers of TPI, beneficial owners of the premises, owner/agents of TPLP, and persons entitled to the control and direction of the management or disposition of the premises."

We set forth below the relevant Code sections. Section 13—196—036 of the Code provides in part:

"The owner/agent of any building which constitutes an imminent danger and hazard to the public shall take immediate action to have a critical examination performed upon such building and provide the ensuing report to the department of buildings. *** Any costs incurred by any department of the city in taking emergency

---

[3]The City's complaint actually referred to section 13—196—037; however, that provision was renumbered as section 13—196—036. See Chicago City Council, *Journal of Council Proceedings*, July 31, 2002, at 91361-62.

actions due to the dangerous and hazardous condition of an unsafe exterior wall *** shall be a debt due and owing to the city and recoverable from the owner/agent of such building." Chicago Municipal Code § 13—196—036 (eff. August 30, 2002).

Section 13—196—031 of the Code provides in part:

" 'Owner/agent' shall mean the owner, agent or person in charge, possession or control of the building." Chicago Municipal Code § 13—196—031 (amended August 30, 2000).

Section 13—11—090 of the Code provides in part:

"With regard to any violation of this chapter by a corporation, all officers and directors thereof who may be responsible for any violation of this chapter shall, except as otherwise specifically prohibited or negated by law, be liable as provided in Section 1—4—090 of this [C]ode for all fines, costs, fees and penalties imposed on a corporation pursuant to this chapter." Chicago Municipal Code § 13—11—090 (1999).

Section 1—4—090 of the Code defines "person" as it is used throughout the Code as follows:

" 'Person' means any natural individual, firm, trust partnership, association, joint venture, corporation or other legal entity, in his or its own capacity or as administrator, conservator, guardian, executor, trustee, receiver or other representative appointed by the court. Whenever the word 'person' is used in any section of this [C]ode prescribing a penalty or fine as applied to partnerships, associations or joint ventures, the word shall include the members thereof, and as applied to corporations shall include the officers, agents or employees thereof who are responsible for any violation of the section[.]" Chicago Municipal Code § 1—4—090 (1999).

■ To briefly summarize, section 13—196—036 provides that the City may recover costs from the "owner/agent" of a building. Pursuant to section 13—196—031, an "owner/agent" only applies to the owner, agent or person in charge, possession or control of the building. Section 13—11—090 permits those officers and directors who may be responsible for any violation to be liable for penalties imposed on a corporation. And, pursuant to section 1—4—090, a "person" can refer to an officer, agent or employee who is responsible for any violation.

Paragraph eight of the City's complaint, which alleged generally that defendants "controlled and managed" the building, stated in part:

"The individual defendants have at all relevant times shared a controlling interest in the affairs of TPI; and through TPI, as general partner of TPLP, they have controlled the affairs of TPLP. As such, the individual defendants could together and/or individually decide whether TPLP and TPI would incur debt, and the

purpose to which the proceeds of any loan or other asset of TPLP or TPI would be used. Together and/or individually the individual defendants directed and controlled the allocation of the assets of TPLP and TPI, and they effectively denied TPLP and TPI the assets needed to adequately fund the repair and remediation of the exterior wall violations at the premises, which as alleged more fully below, render [defendants] personally liable, jointly and severally, for fines and for the City's resulting costs. At all relevant times, [defendants], along with TPLP and TPI, were owner/agents, beneficial owners of the premises, officers of TPI, persons entitled to the control or direction of the management or disposition of the premises and/or agents of the owner for the purpose of managing or controlling the premises."

Paragraph nine of the complaint included various allegations of defendants' financial endeavors that allegedly resulted in depriving the building of sufficient assets to maintain its condition. Specifically, the complaint alleged that in 1997, the building's mortgage was increased by $750,000, which was used by one or more of defendants for a personal real estate venture in Florida. In 1998, a junior mortgage was taken out on the building to secure an $11,100,000 loan that was made "personally to [defendants] for the benefit of themselves and of other entities controlled by them." And, in 1998, the junior mortgage was increased to secure a $2,315,000 loan to a corporation in which "one or more [defendants] has an ownership interest."

■ Here, in order to state a cause of action against defendants, the City's complaint had to allege that defendants fit within one of the above Code section classifications. We find that the allegations in counts I and II of the complaint, when considered in conjunction with paragraphs eight and nine of the complaint, failed to allege sufficient facts necessary to bring defendants within the purview of those Code sections. Counts I and II merely alleged that defendants were jointly and severally liable "because they were at all relevant times owners and officers of TPI, beneficial owners of the premises, owner/agents of TPLP, and persons entitled to the control and direction of the management or disposition of the premises." These allegations consist of nothing more than legal conclusions. Counts I and II of the complaint did not contain any specific factual allegations that defendants were owners/agents "in charge, possession or control of the building," other than allegations that they secured mortgages or loans on behalf of TPLP. Further, the complaint failed to contain any facts that defendants, as officers, directors or persons, were "responsible" for any violations. Additionally, these counts failed to allege any specific actions in which defendants participated to cause them to be personally responsible for the building's violations.

The City cites to *People v. Johnson*, 131 Ill. App. 3d 803 (1985), a case in which a corporate president was subjected to criminal liability in his individual capacity for failing to file retailers' occupation tax returns. However, that case was overruled by *People v. Parvin*, 125 Ill. 2d 519 (1988). The City's opening brief fails to acknowledge that *Johnson* had been overruled; although, in its reply brief, it argues that *Johnson* continues to stand for the proposition that "omissions" as well as "acts" can be the basis for a corporate officer's individual liability. However, we find the City's conclusion doubtful. In *Parvin*, our supreme court specifically held that a corporate defendant could not be held criminally liable for failing to file retailers' occupation tax returns. *Parvin*, 125 Ill. 2d at 521. Further, the facts in *Johnson* have little similarity to the facts in the case at bar, and we reject the City's reliance upon *Johnson*.

The City next relies on *People ex rel. Burris v. C.J.R. Processing, Inc.*, 269 Ill. App. 3d 1013 (1995). In *C.J.R.*, this court analyzed whether the plaintiff's complaint alleged sufficient facts to hold the president of the defendant corporation personally liable for the corporation's violation of requirements under the Illinois Environmental Protection Act (Act) (415 ILCS 5/1 *et seq.* (West 1992)). The court determined that under the Act, corporate officers could be held liable for their "personal involvement" or "active participation" in a violation of the Act. *C.J.R.*, 269 Ill. App. 3d at 1018. The court further determined that because the complaint alleged the president was personally in charge of the facility that had violated the regulations and because the complaint alleged the president had "caused or allowed" the violations to occur, that was sufficient to constitute the president's "personal involvement" or "active participation" in the violations. *C.J.R.*, 269 Ill. App. 3d at 1018.

Here, unlike in *C.J.R.*, the City's complaint failed to allege how defendants were personally responsible for the violations other than because of their positions as owners and officers of TPLP. We do not find *C.J.R.* persuasive.

The City also cites to *Veteran Supply Co. v. Swaw*, 192 Ill. App. 3d 286 (1989), *Johnson v. Western Amusement Corp.*, 157 Ill. App. 3d 873 (1987), and *Geri's West, Inc. v. Ferrall*, 153 Ill. App. 3d 579 (1987), as examples of cases in which this court has imposed personal liability on corporate officers. However, in each of these cases, the complaint alleged that the corporate officer personally participated in the specific act from which the liability resulted. In *Swaw*, the corporate officer personally signed and issued checks with insufficient funds. In *Western Amusement Corp.*, the president of the corporation purposely failed to make payments of union dues and welfare contributions. In *Ferrall*,

the corporate officer personally failed to comply with the Franchise Disclosure Act in that he failed to provide the proper disclosure to a franchisee.

The City next argues that count III of the complaint sufficiently alleged a cause of action against defendants pursuant to section 8—28—020 of the Code. Count III alleged in relevant part:

"Pursuant to Sections 8—28—020 and 1—4—090 of the Code, [defendants] are jointly and severally liable for the costs incurred by the City as a result of the Code violations *** because they are persons who caused the City and its agents to incur costs in order to provide necessary services as the result of their violation of the Code, or their failure to correct conditions which violated the Code, when they were under a legal duty to do so."

Section 8—28—020 is entitled "Liability for Costs of Providing Services" and states:

"Any person who causes the city or its agents to incur costs in order to provide necessary services as the result of such person's violation of any federal, state or local law, or such person's failure to correct conditions which violate any federal, state or local law when such person was under a legal duty to do so, shall be liable to the city for those costs. This liability shall be collectible in the same manner as any other personal liability." Chicago Municipal Code § 8—28—020 (amended May 17, 2000).

The City argues that because the word "person" as used in the above section and as defined in section 1—4—090 can refer to a corporate officer, defendants can be held personally liable for failing to maintain the building in a safe condition.

Here, we do not believe that section 8—28—020 of the Code applies to defendants. Title 8 of the Code is entitled "Offenses Affecting Public Peace, Morals and Welfare." In addition to section 8—28—020, the individual sections of Title 8 are: section 8—4, "Public Peace and Welfare"; section 8—8, "Public Morals"; section 8—12, "Gambling"; section 8—16, "Offenses By or Against Minors"; section 8—20, "Weapons"; section 8—24, "Firearms and Other Weapons"; and, section 8—30, "Evictions for Unlawful Use of Premises." Chicago Municipal Code §§ 8—4, 8—8, 8—12, 8—16, 8—20, 8—24, 8—30 (2000). We are not persuaded that section 8—28—020 applies to building code violations. Unlike those sections in Title 13 of the Code that clearly apply to building code violations, the City conceded to this court during oral argument that it was not aware of a single instance in which section 8—28—020 or any other section in Title 8 had ever been applied to building code violations.

Lastly, the City argues defendants are liable for the City's costs under a theory of common law public nuisance. Our supreme court

has defined a public nuisance as " ' "the doing of or the failure to do something that injuriously affects the safety, health or morals of the public, or works some substantial annoyance, inconvenience or injury to the public. [Citations.]" ' " *Village of Wilsonville v. SCA Services, Inc.*, 86 Ill. 2d 1, 21-22 (1981).

Count IV of the complaint alleged in relevant part:

"The defendants exercised control over the premises *** and exercised all the legal rights and privileges of ownership over the premises during that time. The defendants had a continuing duty, under the ordinances of the City of Chicago and under the common law of Illinois, to maintain the premises in a manner that did not unreasonably interfere with the right of the general public to use safely and conveniently the public way in the areas adjacent to the premises.

*** [T]he defendants breached their duty to maintain the premises in a manner that did not unreasonably interfere with the right of the general public by permitting the degradation of the premises to occur, and by failing to take steps to render the premises safe and not a hazard to the general public. Defendants' breach of their duty created an unreasonable and substantial interference with the right of the general public to use safely the public way in the areas adjacent to the premises.

Defendants' failure to make the premises safe and not a hazard to the general public led directly to the City having to close Randolph and Wells Streets, to canopy those streets, and to take other protective action in order to protect the public.

As a consequence of defendants' failure to make the premises safe and not a hazard to the general public, defendants caused the City to incur approximately $3,200,667.38 in nuisance abatement costs."

Here, as stated above, the City's complaint failed to allege any specific facts that defendants, in their individual capacities, were responsible for the building code violations. The complaint alleged defendants "breached their duty to maintain the premises *** by failing to take steps to render the premises safe." These allegations are merely legal conclusions. Nowhere in the complaint did the City allege any specific actions on behalf of defendants that they personally created the public nuisance. We conclude the complaint failed to allege sufficient facts to state a cause of action against defendants for common law public nuisance.

Accordingly, the judgment of the circuit court dismissing defendants from the cause of action is affirmed.

Affirmed.

HOFFMAN, P.J., and SOUTH, J., concur.