ANN SPARAPANY, Indiv. and as Special Adm'r of the Estate of John W. Sparapany, Jr., *et al.*, Plaintiffs-Appellants, v. REXALL CORPORATION *et al.*, Defendants-Appellees.

First District (3rd Division) No. 1—89—0665

Opinion filed June 30, 1993.

GREIMAN, J., specially concurring.

David A. Novoselsky & Associates, of Chicago (David A. Novoselsky, of counsel), for appellants.

Burditt, Bowles & Radzius, Chartered, of Chicago (Robert G. Epsteen and Richard E. Favoriti, of counsel), for appellee E.R. Squibb & Sons, Inc.

Wildman, Harrold, Allen & Dixon, of Chicago (Richard C. Bartelt, of counsel), and Shook, Hardy & Bacon (Laura D. Stith, of counsel), for appellee Eli Lilly & Co.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini and Lisa Marco Kouba, of counsel), for appellees Rexall Drug Company, Rexall Corp., and Rexall Drug and Chemical Co.

Lord, Bissell & Brook, of Chicago (Hugh L. Moore, of counsel), for appellee Abbott Labs.

Wilson, Elser & Moskowitz, of Chicago (Thomas Murray, of counsel), for appellee B.L. Lemke & Co.

Pretzel & Stouffer, Chartered, of Chicago (Gary A. Peters, of counsel), for appellee Burroughs Wellcome.

Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellees Sharp & Dohme, Inc., Merck, Sharpe & Dohme, and Merck & Co.

PRESIDING JUSTICE TULLY delivered the opinion of the court:
This is an appeal from an order of the circuit court of Cook County, the Honorable Dean J. Sodaro, Judge presiding, dismissing the action of plaintiffs following the granting of summary judgment in favor of defendants pursuant to section 2—615 of the Illinois Code of Civil Procedure (section 2—615) (Ill. Rev. Stat. 1989, ch. 110, par. 2—615 (now codified as 735 ILCS 5/2—615 (West 1992))). Jurisdiction is vested in this court pursuant to Supreme Court Rule 304. 134 Ill. 2d R. 304.
For the reasons which follow, we affirm.

### FACTUAL BACKGROUND
The history of diethylstilbestrol (DES) is well chronicled in the numerous decisions of courts from throughout this nation and need not be revisited here (see, *e.g., Smith v. Eli Lilly & Co.* (1990), 137 Ill. 2d 222, 560 N.E.2d 324). We merely note that between 1941 and 1971, the drug, a synthetic substance which duplicates the activity of the female sex hormone estrogen, was produced by approximately 300 manufacturers and was prescribed for use by millions of pregnant women to prevent miscarriages. In 1971, after a number of studies established a link between *in utero* exposure to DES and the occurrence in teenage women of a rare form of vaginal and cervical cancer, the Federal Food and Drug Administration banned the marketing of the drug for use in the treatment of pregnant women. In the case *sub judice*, plaintiffs allege that *in utero* exposure

to DES has since been linked to aberrations and malformations of the genital tracts of the daughters of those women who originally ingested DES, all of which is now causing harm to a "third generation" of plaintiffs born to these DES daughters.

The plaintiffs in this case are Ann Sparapany (Ann), as special administrator of the estate of her deceased son, John W. Sparapany, Jr. (John), and Ann's minor daughter, Nichole Sparapany (Nichole). The defendants to this action are numerous manufacturers and distributors of DES. According to plaintiffs' complaint, the events which gave rise to their claims began more than 30 years ago, when John and Nichole's maternal grandmother, Florence McCarville, ingested DES during a pregnancy which resulted in the birth of Ann on August 8, 1957. Mrs. McCarville was prescribed DES by her physician to prevent a miscarriage. Plaintiffs allege that as a result of her *in utero* exposure to DES, Ann developed an incompetent cervix and malformed uterus. As a result, John was stillborn at 21 weeks of gestation and Nichole was born approximately 2½ months premature. Nichole suffers from serious and permanent injury and disability that plaintiffs attribute to her premature birth and, ultimately, to Mrs. McCarville's use of DES.

On June 18, 1986, plaintiffs filed their eight-count complaint against defendants, of which counts I through IV are not at issue in this appeal. Plaintiffs purported to state claims against defendants under the theories of negligence and strict liability. Counts V and VI of the complaint sought to set forth wrongful death claims on behalf of John's estate on the theories of negligence and strict liability, respectively. Counts VII and VIII alleged personal injury to Nichole on the theories of negligence and strict liability, respectively.

The trial court, in granting defendants' section 2—615 motion as to counts V through VIII, ruled that the Illinois Supreme Court's decision in *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250, precluded the imposition of a legal duty upon the manufacturers and distributors of DES to plaintiffs for the injuries they allegedly incurred as result of their grandmother's ingestion of DES in 1956-1957. Consequently, on February 9, 1989, the trial court entered judgment against plaintiffs. Plaintiffs filed a timely notice of appeal.

### ISSUE ON APPEAL

The sole issue to be determined in this appeal is: Was the trial court correct in ruling that *Renslow* bars the preconception tort claims of "third generation" DES plaintiffs because those claims arise out of conduct which occurred prior to date of the *Renslow* opinion?

OPINION

"Both negligence and strict liability require proof that [a] defendant breached a duty owed to a particular plaintiff." (*Smith*, 137 Ill. 2d at 265, 560 N.E.2d at 343.) "Whether a duty exists is a question of law to be determined by a court [citation], and thus a motion for summary judgment properly addresses the issue of duty." (*Grove v. City of Park Ridge* (1992), 240 Ill. App. 3d 659, 661, 608 N.E.2d 421, 422.) As stated above, in holding that defendants owed no duty to plaintiffs in this case, the trial court relied on *Renslow*.

In *Renslow*, a mother, on behalf of her minor daughter, filed a medical malpractice action. The complaint in that case alleged that, on two separate occasions, the defendant physicians had negligently transfused the mother, whose blood type was Rh negative, with Rh positive blood. Consequently, the mother's blood became sensitized by the incorrect transfusion due to the incompatibility of the two blood types. In spite of learning of the incompatibility of the blood types, the defendant physicians never informed the mother of the adverse reaction and its associated risks. Seven years later, the mother became pregnant with the minor plaintiff. During the course of prenatal care, a routine blood screening apprised the mother of her condition. Three months later, as a result of injury to the mother's hemolytic process caused by the defendant physicians, the minor plaintiff was born prematurely with severe and permanent neurological damage, exactly the danger associated with such a negligent transfusion.

In affirming the lower court's ruling that the minor plaintiff had stated a cause of action, our supreme court applied the elements of professional negligence to the preconception conduct at issue and found that the defendant physicians owed a duty to the minor plaintiff. A plaintiff's right to maintain such a suit stems from a physician's duty of due care, which arises from the special relationship between physician and patient. However, the supreme court realized that it was creating a new duty and limited the persons to whom this new duty could be owed. The *Renslow* court held that this new duty was not owed to persons injured by preconception conduct occurring prior to August 8, 1977, the date of its opinion, when it stated:

> "Since the liability announced herein represents an extension of duty to a new class of plaintiffs, we hold that it be given prospective application. Therefore, except as to the plaintiff herein, the rule shall apply only to cases arising out of future conduct." *Renslow*, 67 Ill. 2d at 359, 367 N.E.2d at 1256.

■ Upon reviewing the arguments of the parties, we find the plain language of the *Renslow* decision clearly limits application of the duty

found in that case to instances arising out of conduct that occurs on or after the date of that opinion. The conduct which plaintiffs complain of in this case, the marketing of an unsafe drug and consequential ingestion of it by Mrs. McCarville, occurred in 1956-1957, 20 years prior to *Renslow*. Thus, defendants did not owe a duty to plaintiffs at either the time of the conduct or subsequent to the rendering of *Renslow*. Consequently, as there was no duty imposed upon defendants which they could have breached, plaintiffs' claims are not actionable.

■ Still to be considered is plaintiffs' assertion that their claims are not time barred under the theory that defendants engaged in a "conspiracy of silence" and, thus, breached a continuing duty to warn of the dangers of DES. It is settled law in Illinois that a theory cannot be presented on review which was not presented in the trial court; any such theory not presented below is deemed waived. (*Cosentino v. Price* (1985), 136 Ill. App. 3d 490, 494-95, 483 N.E.2d 297, 300.) Accordingly, we find that this issue is not cognizable on appeal as plaintiffs did not raise it at the trial level. Moreover, even were we to assume that this issue was not waived, we nevertheless believe the complained-of conduct which serves as the genesis for this "conspiracy of silence" occurred well before 1977 and, consequently, is barred by the prospective language of *Renslow*.

■ Finally, we turn to plaintiffs' contention that because *Renslow* was a negligence case, which did not specifically address the topic of strict liability, its prospective language is thus inapplicable to such counts in plaintiffs' complaint. Thus, according to plaintiffs, their claims under a strict liability theory are still viable. We find that this argument has also been waived by plaintiffs due to their failure to raise it at the trial court. (*Cosentino*, 136 Ill. App. 3d at 494-95, 483 N.E.2d at 300.) Assuming, however, that the issue was properly preserved on appeal, we would note that these claims are time barred pursuant to the 12-year limitation period for bringing such a product liability suit found in the statute of repose (Ill. Rev. Stat. 1987, ch. 110, par. 13—213). Mrs. McCarville took the DES at issue in this case in 1956-1957 and, therefore, all strict liability claims have long since lapsed.

In closing, we emphasize that our decision in this case finding that defendants owed no duty to plaintiffs rests *solely* upon our conclusion that the complained-of conduct occurred prior to August 8, 1977, the date of the *Renslow* decision. Nothing in this opinion speaks to the issue of whether a pharmaceutical manufacturer or distributor can be held liable for injuries allegedly suffered by grandchildren, yet unconceived, of an individual who has ingested a drug on or after August 8, 1977.

In light of the foregoing, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CERDA, J., concurs.

JUSTICE GREIMAN, specially concurring:
This court is clearly limited in its consideration of the issue presented in this case by the mandate of the supreme court in *Renslow* for prospective application of liability for preconception torts (*Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250) and by the limitations period imposed by the statute of repose (Ill. Rev. Stat. 1987, ch. 110, par. 13—213). I write separately only to voice my concerns over what I believe to be the unnecessarily premature cutoff of claims by DES grandchildren.

The 1977 *Renslow* decision, upon which the majority opinion necessarily rests, established a duty to a woman, as a potential mother, even though no child had yet been conceived and thereby recognized a cause of action for her future-born child based on preconception injuries. Thus, *Renslow* established that a legal duty is owed to a person not yet in existence when the cause of the harm is inflicted. The supreme court reasoned that "[l]ogic and sound policy require finding of legal duty in this case." *Renslow*, 67 Ill. 2d at 359.

In creating this extension of duty to a new class of plaintiffs, the supreme court considered the defendants' assertion that a duty for preconception torts should not be imposed because of "the need for an end to responsibility, short of perpetual liability for a single wrongful act." (*Renslow*, 67 Ill. 2d at 358.) As an example of such perpetual liability, the *Renslow* defendants mentioned "the specter of successive generations of plaintiffs complaining against a single defendant for harm caused by genetic damage done an ancestor in a nuclear accident." (*Renslow*, 67 Ill. 2d at 358.) The supreme court found this argument unpersuasive:

> "While we aware that there may be similar potential for perpetual claims arising from chemical accident or long-term radiation exposure [citation], the case at bar is clearly distinguishable. *The damage alleged is not, by its nature, self-perpetuating, nor is the plaintiff a remote descendant.* We feel confident that when such a case is presented, the judiciary will effectively exercise its traditional role of drawing rational distinctions, consonant with current perceptions of justice, between which are compensable and those which are not." (Emphasis added.) *Renslow*, 67 Ill. 2d at 358.

While a court cannot conclusively state either with medical certainty or as a matter of law that the DES generations will necessarily cease at the third-generational stage, the likelihood of such an end is probably as-

sured. Accordingly, the fear of perpetual liability being imposed by far-removed descendants seems meritless under these circumstances and needlessly unjust to the DES grandchildren.

The supreme court in 1977 felt confident that the judiciary would draw rational distinctions comporting with justice when faced with future situations involving a wrong committed prior to a child's existence. At that time, the disastrous effects of DES were only coming to light concerning the DES children. Only with the further passage of time could the injuries and deaths of DES grandchildren be reasonably known or considered.

As an appellate court judge, I am constrained in this matter to apply prospectively the extended duty created in *Renslow* in 1977. The Illinois Supreme Court, however, is not so confined and may now exercise its traditional role in recognizing the need to adjust duties to fit new and unique situations.

Perhaps the grave, but time-limited, distress caused to DES grandchildren is not so far removed from the principles richly expressed in *Renslow.*