THE PEOPLE *ex rel.* ROLAND W. BURRIS, Attorney General *et al.*, Plaintiff-Appellant, v. C.J.R. PROCESSING, INC., *et al.*, Defendants (Curtis Appel, Indiv. and as President of C.J.R. Processing, Inc., Defendant-Appellee).

Third District    No. 3—94—0268

Opinion filed March 8, 1995.

Roland W. Burris, Attorney General, of Chicago, and David W. Neal, State's Attorney, of Morris (John P. Schmidt, Assistant Attorney General, and Thomas M. Sealy, Assistant State's Attorney, of counsel), for appellant.

Curtis Appel, of Chicago, and Martin N. Preiser, of River Forest, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The State appeals from the dismissal of one of the defendants, Curtis Appel, from an enforcement action brought against various defendants pursuant to the Environmental Protection Act (Act) (415 ILCS 5/1 et seq. (West 1992)). In dismissing Appel, the circuit court of Grundy County concluded that the definition of "person" under the Act did not include corporate officers. As a consequence, the court determined that the State's complaint did not state a cause of action against Appel. On appeal, the State contends that both of the trial court's decisions are incorrect. We agree. Therefore, we reverse and remand.

## FACTS AND PROCEDURAL BACKGROUND

Defendants C.J.R. Processing, Inc. (CJR), and Regenex, Inc. (Regenex), are corporations conducting business in Illinois. CJR is a wholly owned subsidiary of Regenex. Appel is the president of CJR. He is responsible for CJR and controls its activities. Appel is also the executive vice-president and chief operating officer for Regenex.

According to the complaint, CJR, Regenex, and Appel (the defendants) own and operate a facility located in Morris (the Morris facility). From April 11, 1991, until March 31, 1993, the defendants transported large quantities of solid and liquid waste materials to the Morris facility, where the waste is stored. Representatives of the Illinois Environmental Protection Agency inspected the Morris facility on two occasions and found large amounts of the solid waste scattered throughout the building.

On September 3, 1993, the State filed a 14-count complaint against the defendants. After discovering further information, the State filed a second amended complaint on November 29, 1993. The complaint categorized all of the waste stored in the Morris facility as "special waste." In this 24-count complaint, counts I through XI allege the defendants caused or allowed various violations of the Act and its regulations. Count XVII alleges the defendants caused or allowed the creation and maintenance of a common law public nuisance. Count XVIII alleges the defendants caused or allowed the creation and maintenance of a public nuisance in violation of section 221 of "An Act to revise the law in relation to criminal jurisprudence"

(the Criminal Jurisprudence Act) (740 ILCS 55/221 (West 1992)). Count XXIII alleges the defendants violated section 43(a) of the Act by causing or allowing substantial danger to the environment or public health. (See 415 ILCS 5/43(a) (West 1992).) The complaint requested preliminary and permanent injunctive relief, the imposition of civil penalties, and orders requiring the defendants to correct the violations. The remaining counts purport to state causes of action against other defendants and have no bearing on this appeal.

On January 11, 1994, Appel filed a motion asking the trial court to dismiss him as a defendant. In his motion, Appel contended he acted solely in his capacity as a corporate officer of Regenex and CJR. Appel pointed out that section 3.26 of the Act (415 ILCS 5/3.26 (West 1992)) did not expressly include corporate officers in its definition of "person." Therefore, Appel claimed that he could not be liable for the acts or omissions of the corporations.

At a hearing on March 11, 1994, the trial court granted Appel's motion. The court concluded that Appel could not be held individually liable because the Act's definition of "person" does not include corporate officers or directors. The court also found that the complaint's allegations were insufficient to state a cause of action. The State's timely notice of appeal followed.

## DISCUSSION AND ANALYSIS

The instant case presents questions of first impression in Illinois. We identify these issues as follows: (1) whether a corporate officer is a "person" under section 3.26 of the Act; and (2) whether a corporate officer may be held individually liable for a corporation's violations of the Act when he or she is personally involved or actively participates in those violations. We answer both of these questions in the affirmative.

Based on our resolution of these questions, we find the complaint is legally and factually sufficient to state a cause of action against Appel for violations of the Act and for statutory and common law public nuisances.

### I. Scope of Section 3.26

The State first argues that the trial court committed error when it determined that Appel is not a "person" under the Act. We agree. Section 3.26 of the Act provides in full:

" 'Person' is any *individual*, partnership, co-partnership, firm, company, corporation, association, joint stock company, trust, estate, political subdivision, state agency, or any other legal entity, or their legal representative, agent or assigns." (Emphasis added.) (415 ILCS 5/3.26 (West 1992).)

The Federal Resource Conservation and Recovery Act (RCRA) (42 U.S.C.A. § 6901 *et seq.* (West 1983)) contains a similar definition of "person" which neither includes nor excludes corporate officers. (42 U.S.C.A. § 6903(15) (West Supp. 1994).) In *United States v. Northeastern Pharmaceutical & Chemical Co.* (8th Cir. 1986), 810 F.2d 726, the court noted that the definition includes individuals. Also, the court said that Congress could have limited RCRA's definition of "person" but evidently chose not to do so. Therefore, the court held the corporate officers individually liable for the corporation's acts. *Northeastern Pharmaceutical*, 810 F.2d at 745.

One of the Act's prime purposes is to hold responsible those who cause harm to the environment. (415 ILCS 5/2(b) (West 1992).) The Act must be liberally construed in order to effectuate its purposes. 415 ILCS 5/2(c) (West 1992).

■ Based upon the authority set forth above, we hold that the Act's definition of "person" includes corporate officers. First, section 3.26 explicitly includes individuals and does not exclude corporate officers. Moreover, our General Assembly could have explicitly excluded corporate officers from section 3.26, but it did not do so. In these respects, the Act's definition of "person" is similar to that contained in RCRA. See 415 ILCS 5/3.26 (West 1992); 42 U.S.C.A. § 6903(15) (West Supp. 1994); *Northeastern Pharmaceutical*, 810 F.2d at 745.

Second, the General Assembly intended for the Act to be liberally construed. A constricted interpretation of section 3.26 would not serve the Act's express purpose of imposing responsibility upon those who cause harm to the environment. (See 415 ILCS 5/2(b),(c) (West 1992).) For the reasons indicated, we conclude that section 3.26 includes corporate officers. Accordingly, we hold that Appel, as a corporate officer of Regenex and CJR, is a "person" within the meaning of section 3.26 of the Act.

Appel insists that the decision in *People v. Celotex Corp.* (C.D. Ill. 1981), 516 F. Supp. 716, forecloses our discussion on this issue. In *Celotex*, the court held that corporate officers could not be individually liable for violations of the Act. The court reached this decision because section 3.26 did not expressly define "person" to include corporate officers. (See *Celotex*, 516 F. Supp. at 719.) We do not agree with this interpretation of section 3.26.

First, *Celotex* is a decision of a Federal district court and is not binding upon this court. Second, the *Celotex* court in its analysis did not examine the plain language of section 3.26 to determine whether the corporate officer fit any of the other terms expressly included in the definition. Third, the court in *Celotex* did not utilize the principle

of broad construction when it examined section 3.26. We have already concluded that a narrow interpretation of section 3.26 is inappropriate. For these reasons, we determine that *Celotex* has no application to the present case.

## II. Sufficiency of the Complaint

The State's second contention on appeal is that the complaint is legally and factually sufficient to state a cause of action against Appel. Again, we agree. Following our thorough review of the complaint and applicable law, we determine that the trial court committed error when it found the complaint deficient.

On review of the dismissal of a complaint for failure to state a cause of action, we must take as true all well-pleaded facts contained in the complaint. (*DiBenedetto v. Flora Township* (1992), 153 Ill. 2d 66, 69, 605 N.E.2d 571, 573.) Also, in our review, we must interpret the complaint's allegations in the light most favorable to the plaintiff. *Dix Mutual Insurance Co. v. LaFramboise* (1992), 149 Ill. 2d 314, 318-19, 597 N.E.2d 622, 624.

Federal courts have held that corporate officers are liable for their corporations' violation of environmental protection statutes if the officer was either directly responsible for, personally involved in, or actively participated in the acts constituting the violation. For example, in *Northeastern Pharmaceutical*, the president and vice-president of the corporation were held individually liable for violations of RCRA. The vice-president had personally arranged for the disposal of the waste. The president was personally responsible for all of the corporation's operations and had the ultimate authority to control the disposal of its waste products.

The court noted that Congress' intent in enacting RCRA was to hold responsible those persons involved in the handling and disposal of waste products. The court said that imposition of liability on the corporation and not upon the responsible individuals would thwart this objective. (*Northeastern Pharmaceutical*, 810 F.2d at 745; see also *United States v. Conservation Chemical Co.* (N.D. Ill. 1989), 733 F. Supp. 1215, 1221-22.) In addition, at least two of our sister States have utilized the principles expressed in *Northeastern Pharmaceutical* to hold corporate officers liable for their active involvement or individual participation in violating State hazardous waste management statutes. *T.V. Spano Building Corp. v. Department of Natural Resources* (Del. 1993), 628 A.2d 53, 61; *State v. Missouri Resource Recovery, Inc.* (Mo. App. 1992), 825 S.W.2d 916, 924-26; *cf. In re Dougherty* (Minn. App. 1992), 482 N.W.2d 485, 488.

We find the reasoning in the above-cited cases to be particularly persuasive in construing the Act. As we have previously stated, the Act must be liberally construed to effectuate its purposes. (415 ILCS 5/2(c) (West 1992).) Moreover, our General Assembly intended to impose liability on those responsible for harming the environment. (415 ILCS 5/2(b) (West 1992).) Imposing liability only upon the corporations and not on the individuals involved in harming the environment would undermine the Act's purposes. Accordingly, we hold that corporate officers may be held liable for their personal involvement or active participation in a violation of the Act.

■ We will now apply these principles to the facts of the case at hand. The complaint alleges that Appel is a corporate officer of Regenex and CJR. Counts I through XI also allege that Appel operates the Morris facility. Moreover, the operative allegations charge that Appel "caused or allowed" all of the violations to occur in conjunction with the other defendants. Because the allegations must be taken as true and viewed in the light most favorable to the State, we conclude that the complaint adequately alleges Appel's personal involvement or active participation in the activities which caused the violations of the Act. Consequently, the complaint states a cause of action against Appel.

However, Appel contends that *Northeastern Pharmaceutical* and its progeny have no application to this case. Appel correctly points out that the complaint classifies the waste in the Morris facility as *special* waste. Appel also notes that all of the extrajurisdictional authority upon which we have relied involved the disposal of *hazardous* waste.

A review of RCRA and *Northeastern Pharmaceutical* demonstrates that their applicability is *not* limited to the regulation of hazardous waste. The court in that case based its reasoning on section 7003(a) of RCRA, which regulates both hazardous waste *and* solid waste. (42 U.S.C.A. § 6973(a) (West Supp. 1994).) In addition, the *Northeastern Pharmaceutical* court's decision did not turn on the fact that hazardous waste products were involved. Rather, a careful reading of the court's decision shows that its findings were also based on the following two factors: (1) the corporate officers' status as "persons" under RCRA; and (2) their personal involvement in the RCRA violations. *Northeastern Pharmaceutical*, 810 F.2d at 745.

As a result, we cannot draw a meaningful distinction between *Northeastern Pharmaceutical* and the facts of the instant case. Here, Appel is a "person" under the Act. Also, the complaint alleges Appel was personally involved and actively participated in the decisions and corporate activities which caused the violations of the Act. Moreover, we have interpreted the Act to hold all persons liable when

their activities harm the environment. The fact that hazardous waste products are not involved in the instant case does not render the *Northeastern Pharmaceutical* case less persuasive to us. As a result, we conclude that Appel's attempt to distinguish *Northeastern Pharmaceutical* is without merit.

Finally, the State contends the complaint sets forth a cause of action against Appel for creating common law and statutory public nuisances. Again, we agree with the State. Our examination of the complaint reveals that it is legally and factually sufficient to state a cause of action for the creation of public nuisances.

A common law public nuisance has been defined as an act or failure to act which injures the safety, health or morals of the public, or which causes substantial public annoyance, inconvenience or injury. (*Village of Wilsonville v. SCA Services, Inc.* (1981), 86 Ill. 2d 1, 21-22, 426 N.E.2d 824, 834.) The Criminal Jurisprudence Act defines public nuisances in pertinent part:

"It is a public nuisance:

1. To cause or allow *** any offal, filth, or noisome substance to be collected, deposited or to remain in any place, to the prejudice of others.

\* \* \*

8. To *** use any building or other place for the exercise of any trade, employment or manufacture, which, by occasioning noxious exhalations, offensive smells or otherwise, is offensive or dangerous to the health of individuals, or of the public." 740 ILCS 55/221(1), (8) (West 1992).

Both counts allege the defendants, including Appel, created a public nuisance as demonstrated by the following conditions: (1) some of the waste materials are not sealed in a container; (2) some of the waste is scattered about the floor of the Morris facility; and (3) the defendants have failed to observe certain safety regulations. Furthermore, the counts also state that over 1,000 cubic feet of rags are strewn about the Morris facility and constitute a fire hazard. Both counts allege the unsealed waste material could infiltrate nearby sewer systems and public water supplies in the event of a fire at the Morris facility. Finally, both counts state that Appel and the other defendants have created these conditions which continue to exist at the Morris facility.

Again, we accept these allegations as true and view them in the light most favorable to the State. Counts XVII and XVIII allege that Appel's acts and omissions caused or contributed to the current conditions at the Morris facility. The complaint also alleges that these conditions threaten the public health. For the reasons stated, we

conclude that the allegations contained in counts XVII and XVIII are adequately specific to state a cause of action against Appel for creating statutory and common law public nuisances.

## CONCLUSION

We hold as follows: (1) Appel is a "person" under the Act; (2) section 3.26 is broad enough to include corporate officers within its reach; and (3) corporate officers may be held liable for violations of the Act when their active participation or personal involvement is shown. In sum, we find the complaint adequately states causes of action against Appel for violations of the Act and statutory and common law public nuisances.

Our decision renders it unnecessary to consider the other issues raised in this appeal. For the reasons indicated, the judgment of the circuit court of Grundy County is reversed and the cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.

BRESLIN and LYTTON, JJ., concur.