THE PEOPLE *ex rel.* LISA MADIGAN, Attorney General of the State of Illinois, Plaintiff-Appellant, v. CYRUS TANG, Indiv., and as Chairman and Chief Executive Officer of Pielet Brothers Scrap Iron and Metal L.P., Defendant-Appellee.

First District (1st Division)   No. 1—02—3337

Opinion filed February 2, 2004.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Dianne M. Potts, Assistant Attorney General, of counsel), for appellant.

Sachnoff & Weaver, Ltd., of Chicago (Edward V. Walsh III and Michael D. Richman, of counsel), for appellee.

JUSTICE McBRIDE delivered the opinion of the court:

The State appeals the dismissal of its second amended complaint in which it charged Cyrus Tang, individually and as chairman and chief executive officer of Pielet Brothers Scrap Iron and Metal L.P. (P Brothers LP), with violations of the Illinois Environmental Protection Act (415 ILCS 5/1 et seq. (West 2000)) (the Act). We affirm dismissal of the complaint.

The State filed its original complaint against Tang on June 19, 2001. It charged him, under the Act, with open dumping, improper waste disposal, developing a waste disposal site without a permit, operation of a waste disposal site without an operating permit, water pollution, water pollution hazard, and failure to post a landfill bond. It also charged common law public nuisance. The complaint alleged that Tang was chairman and chief executive officer of and had a controlling ownership in P Brothers LP. A nonparty was the chief operating officer. The complaint alleged that "Defendant Tang conducted an automobile shredding operation at the site through the business entities." It accused him of causing and allowing auto shredder residue and auto fluff to be piled outside for more than one year, both from on-site operations and other off-site automobile shredding operations. It further alleged that the decision to spend money to clean up the wastes could not have been made without Tang's approval. It claimed that "[d]efendant Tang had taken no action, nor had caused any action to be taken, to institute measure(s) to prevent this material including auto fluff waste from entering the environment via different pathways, including but not limited to, storm water runoff from the site." The complaint sought declaratory and mandatory injunctive relief and assessment of fines.

Tang moved to dismiss the complaint under section 2—619.1 of

the Code of Civil Procedure (735 ILCS 5/2—619.1 (West 2000)), claiming that the State failed to "allege any personal involvement in any wrongful act by Mr. Tang, and thus fail[ed] to state a claim under Illinois law." Tang further claimed that the court could not grant the requested mandatory injunctive relief because Tang did not own or have control over the site. Although the order is not included in the record on appeal, the parties inform us that the State's original complaint was dismissed on December 7, 2001, without prejudice.

The State subsequently filed its first amended complaint. The complaint was nearly identical to the original complaint, except that it added counts for failure to file an initial report on location and disposal practices, violation of the annual reporting requirement, violation of the groundwater reporting requirement, violation of the record-keeping requirements, and accumulation of waste on site for over one year. It also contained an allegation that Tang "caused or allowed" the violations

> "as a part of his performance of, and as a direct result of, his duties as Chairman and Chief Executive Officer of P Brothers LP, and because of his controlling ownership interest in both a limited partner and the general partner of P Brothers LP. These duties included, and his controlling ownership interest meant, that Defendant Tang was a person, if not the only one, who could decide to make the expenditure in such an amount to be sufficient to dispose of the auto shredder residue and/or auto fluff waste at the site."

It further alleged:

> "Defendant Tang failed to make the decision to properly dispose of, or direct or authorize sufficient funding reasonably necessary for the disposal of, the auto shredder residue and/or auto fluff waste at the site. In this fashion, Defendant Tang caused or allowed the consolidation of the auto shredder residue and/or auto fluff waste at the site."

Tang moved to dismiss the first amended complaint under section 2—619.1 of the Code of Civil Procedure (735 ILCS 5/2—619.1 (West 2000)). The court granted the motion and dismissed the first amended complaint in part with prejudice and in part without prejudice on April 12, 2002. The portions dismissed with prejudice were the requests for mandatory injunctive relief, which the court dismissed because it found that the portion of the Act under which the State sought a mandatory injunction did not permit mandatory injunctive relief, and the counts charging Tang with failing to comply with the reporting requirements because the court found that those sections of the Act impose duties on facilities, not on individuals. After its first amended complaint was dismissed, the State filed motions to

reconsider or alternatively to enter a Rule 304(a) (155 Ill. 2d R. 304(a)) finding, allowing immediate appeal. The court denied the motions.

The State sought leave to file its second amended complaint. The State included those claims that were dismissed with prejudice from the first amended complaint. According to the State, the claims were included only "to preserve the issue for appeal." Tang objected to inclusion of the previously dismissed claims, and the court disallowed them.

As filed, the second amended complaint charged open dumping, improper waste disposal, developing a waste disposal site without a permit, operation of a waste disposal site without an operating permit, water pollution, water pollution hazard, common law public nuisance, failure to post landfill bond, and accumulation of waste on site for over one year. Its allegations were very similar to the allegations made in the original and first amended complaints. With regard to the first six counts, it alleged that Tang "conduct[ed] an automobile shredding operation at the site" and "caused and allowed" (1) the resultant "auto shredder residue and auto fluff to be piled outside, uncontainerized and uncovered"; (2) "auto shredder residue and/or auto fluff waste from off-site automobile shredding operations to be accepted at the site in addition to that generated on-site"; and (3) "auto shredder residue and/or auto fluff waste to be consolidated." Further, it alleged that Tang "fail[e]d to take any action to remove the wastes *** to a licensed disposal facility" and "fail[ed] to authorize the expenditure necessary for proper removal of the [wastes]." The complaint again sought mandatory injunctive relief and, this time, alleged:

> "On information and belief, Midwest Metallics LP [the now bankrupt entity that was formerly P Brothers LP] will raise no objection to Defendant Cyrus Tang entering the site and taking such actions necessary to cease the violations of the Act he is committing at the site if ordered to do so by this Court after trial."

Tang moved under section 2—619.1 (735 ILCS 5/2—619.1 (West 2000)) to dismiss the second amended complaint, claiming that the allegations were insufficient to state a claim against him personally, that mandatory relief was not allowed under the Act, and that he had no legal interest in the property, which prevented the court from ordering him to enter the property for remediation.

The trial court agreed with Tang on all three grounds. First, it found that the allegations were insufficient to state a claim against Tang personally. It found that Tang's "involvement and participation as alleged [were] not because he was operating the facility *** but because he was chairman and chief executive officer and because of his controlling and ownership interest." At most, the court found that the complaint

"allege[d] that [Tang's] personal involvement and active participation [was] due to his activities as Chairman and Chief Executive Officer and controlling interest and his failure in that capacity to dispose of the residue or to authorize sufficient funding to dispose of the residue or to authorize sufficient funding to dispose of the residue and 'in this fashion' caused or allowed the residue on the site."

With regard to the additional issues, the court recognized that "Illinois law is clear that a mandatory injunction may not issue to a non-owner or non-controller of the property [citation] which is the subject matter of the injunction." It also held that the portion of the Act relied upon by the State "allows only Restraining orders and not positive mandatory injunctions." Thus, the court dismissed the second amended complaint with prejudice.

The State appeals on three grounds. First, it claims that its first and second amended complaints adequately state multiple causes of action against Tang. Second, it maintains that mandatory injunctive relief is appropriate. Third, the State claims that the trial court erred in finding that it lacked authority to grant the requested relief because Tang has no legal interest in the property at issue. The State urges us to "reverse the dismissal of its first and second amended complaints and to remand all of the counts and remedies sought therein for further proceedings in the circuit court."

■ Tang contends that our review should be restricted to the State's second amended complaint because the State failed to "include in its Second Amended Complaint by restatement or incorporation by reference each theory of recovery argued in the First Amended Complaint" and, consequently, waived those claims on appeal. Regardless, Tang argues, even if the first amended complaint is considered, the trial court's dismissal was proper for the same reasons it was proper to dismiss the second amended complaint. In reply, the State argues that it did not waive its right to appeal the dismissal of its first amended complaint by failing to incorporate the dismissed claims in its second amended complaint because the State attempted to incorporate those claims, solely for the purpose of preserving them for appeal, but was prevented from doing so upon Tang's objection. The State failed to include the order dismissing its first amended complaint in its appendix in violation of Rule 342(a) (155 Ill. 2d R. 342(a) ("The appellant's brief shall include as an appendix, *** a copy of the judgment appealed from ***")), and we need not consider the State's arguments with regard to that order. Regardless, the claims dismissed in the first amended complaint would be subject to dismissal for the same reasons as the claims in the second amended complaint as

discussed below.[1] Thus, even if the claims were not waived, we would hold that they were properly dismissed.

■ As to the merits, we first note that our review is *de novo*. *Safeway Insurance Co. v. Daddono*, 334 Ill. App. 3d 215, 218 (2002). "We take as true all well-pled facts and reasonable inferences therefrom and consider only those facts in the pleading and included in attached exhibits." *Safeway*, 334 Ill. App. 3d at 218. Illinois law requires a plaintiff to "allege facts stating the elements of the cause of action," and unsupported legal conclusions and factual conclusions are insufficient and will be disregarded in ruling on a motion to dismiss. *Safeway*, 334 Ill. App. 3d at 222. Dismissal of a complaint should be affirmed only when "it is clear that a plaintiff cannot prove a set of facts that will entitle him to the relief sought." *Safeway*, 334 Ill. App. 3d at 218.

In this case, we are not asked to determine whether, as a general proposition, a corporate officer may ever be held liable for corporate wrongs under the Act; both parties concede that, under certain circumstances, a corporate officer may be individually liable. Instead, we must determine whether the pleadings in this case are sufficient to state a claim for Tang's individual liability. Apparently, only one Illinois case has specifically addressed the issue of a corporate officer's potential individual liability under the Act. The trial court relied on this case in rendering its decision, and both parties claim the case supports their contentions on appeal.

In *People ex rel. Burris v. C.J.R. Processing, Inc.*, 269 Ill. App. 3d 1013, 1015 (1995), the appellate court for the Third District considered "whether a corporate officer may be held individually liable for a corporation's violations of the Act when he or she is personally involved or actively participates in those violations." The court found that the officer could be held liable under those limited circumstances, *i.e.*, "active participation or personal involvement." *C.J.R.*, 269 Ill. App. 3d at 1020. In *C.J.R.*, the court found that the complaint sufficiently alleged "active participation or personal involvement" to withstand a motion to dismiss. Specifically, the complaint alleged that the defendant was "responsible for CJR and controll[ed] its activities." *C.J.R.*, 269 Ill. App. 3d at 1014. He also served as executive vice president and chief operating officer for C.J.R.'s parent corporation. *C.J.R.*, 269 Ill. App. 3d at 1014. The defendant was also alleged, in

---

[1]Section 21(d) of the Act, under which the claims for failure to properly file reports were brought, requires that such reports be filed by a person who "[c]onduct[s] any waste-storage, waste-treatment, or waste-disposal operation." 415 ILCS 5/21(d) (West 2000).

cooperation with C.J.R. and its parent corporation, to "own and operate a facility" to which they "transported large quantities of solid and liquid waste materials." *C.J.R.*, 269 Ill. App. 3d at 1014. The appellate court found that "the complaint allege[d] [that the corporate officer] was personally involved and actively participated in the decisions and corporate activities which caused the violations of the Act." *C.J.R.*, 269 Ill. App. 3d at 1018. Specifically, the court placed significance on the fact that each count of the complaint alleged that the defendant personally operated the facility. *C.J.R.*, 269 Ill. App. 3d at 1018. The court also considered significant in its holding that "the operative allegations charge[d] that [the corporate officer] 'caused or allowed' all of the violations to occur in conjunction with the other defendants." *C.J.R.*, 269 Ill. App. 3d at 1018.

The State argues that under *C.J.R.*, it has adequately stated claims against Tang individually. Tang also relies on *C.J.R.*, but claims that the complaint does not state a cause of action. No Illinois court has interpreted or applied those portions of *C.J.R.* dealing with a corporate officer's potential individual liability under the Act. Accordingly, both parties have referred us to cases from other jurisdictions in support of their positions.

■ Before analyzing those cases, we outline some of the principles underlying corporation law in Illinois. "One of the purposes of a corporate entity is to immunize the corporate officer from individual liability on contracts entered into in the corporation's behalf." *National Acceptance Co. of America v. Pintura Corp.*, 94 Ill. App. 3d 703, 706 (1981). Accordingly, in most instances, the law immunizes corporate officers from corporate liabilities and debts. *Safeway*, 334 Ill. App. 3d at 219 ("[C]orporate status generally shields corporate officers and shareholders from liability from corporate debts and obligations"). However, "corporate officer status does not insulate [a corporate officer] from individual liability for the torts of the corporation in which he actively participates." *Pintura*, 94 Ill. App. 3d at 706; see also *Safeway*, 334 Ill. App. 3d at 219 ("[T]his protection does not shield corporate officers from their own wrongdoing"); *Simon v. Pelouze*, 263 Ill. App. 177 (1931) (recognizing that corporate officers and directors can be held liable for tortious acts by the corporation only where the officer or director participated in the tortious act). Some torts for which corporate officers may be liable include negligence, fraud, trespass to realty, willfully inducing breach of contract, and conversion. *Pintura*, 94 Ill. App. 3d at 706.

We have reviewed the out-of-jurisdiction cases cited by the parties in support of their contrary claims regarding the sufficiency of the allegations in this case. Most of these cases deal with liability under the

"owned or operated" standard for liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) (42 U.S.C. § 9601 *et seq.* (2000)) rather than the Act's "caused or allowed" standard, which is at issue here (415 ILCS 5/12(a) (West 2000)). Regardless, the cases are useful to our analysis because they are premised on the same general principles of corporation law that we discussed above and because the CERCLA provision is in many ways analogous to the Act's provision.

■ Both CERCLA and the Act impose liability on "persons" who violate their provisions, and "person" is broadly defined in both statutes to include individuals, partnerships, firms, associations, corporations, and governmental subdivisions and agencies. Compare 42 U.S.C. § 9601(21) (2000) and 415 ILCS 5/3.26 (West 2000). Under CERCLA, however, liability attaches to those who "owned or operated any facility at which such hazardous substances were disposed of" at the time of disposal. 42 U.S.C. § 9607(a)(2) (2000). Under the Act, on the other hand, liability attaches to those who "[c]ause or allow the open dumping of any waste" (415 ILCS 5/21(a) (West 2000)) and those who "[c]ause or threaten or allow the discharge" of contaminants that cause or tend to cause water pollution within the state (415 ILCS 5/12(a) (West 2000)). In determining a corporate officer's liability under the Act, this distinction is minimal. The difference is that instead of having to have been an owner or active operator of the facility where the violations occurred to be liable under CERCLA, the officer must have caused or allowed the violations in order to be liable under the Act.[2]

In *United States v. Bestfoods*, 524 U.S. 51, 141 L. Ed. 2d 43, 118 S. Ct. 1876 (1998), the Supreme Court considered whether a parent corporation could be held liable for its subsidiary's CERCLA violations. The Court made two important and relevant holdings. First, it held that "a parent corporation that actively participated in, and exercised control over, the operations of a subsidiary may [not], without more, be held liable as an operator of a polluting facility owned or operated by the subsidiary" "unless the corporate veil may be pierced." *Bestfoods*, 524 U.S. at 55, 141 L. Ed. 2d at 52, 118 S. Ct.

---

[2]We note that this reasoning applies equally with the common law public nuisance claim because "[a] common law public nuisance has been defined as an act or failure to act which injures the safety, health or morals of the public; or which causes substantial public annoyance, inconvenience or injury." *C.J.R.*, 269 Ill. App. 3d at 1019. Thus, at its very least, an individual must be found to have acted or failed to act in such a way as to have caused the public nuisance in order for liability to attach.

at 1881. Second, the Court held that "a corporate parent that actively participated in, and exercised control over, the operations of the facility itself may be held directly liable in its own right as an operator of the facility." *Bestfoods*, 524 U.S. at 55, 141 L. Ed. 2d at 52, 118 S. Ct. at 1881. The Court noted that "it is hornbook law that 'the exercise of the "control" which stock ownership gives to the stockholders ... will not create liability beyond the assets of the [corporation].' " *Bestfoods*, 524 U.S. at 61-62, 141 L. Ed. 2d at 56, 118 S. Ct. at 1884, quoting W. Douglas & C. Shanks, *Insulation From Liability Through Subsidiary Corporations*, 39 Yale L.J. 193, 196 (1929). These holdings have guided courts across the country that have considered corporate officers' potential liability for corporate environmental wrongs.

■ The facts of the out-of-jurisdiction cases cited by the parties confirm that more than a corporate title is required in order for an officer to be held liable for corporate violations of environmental protection laws. There is, however, no precise definition as to what must be alleged to state a claim for personal liability. As we review the cases, we note that the federal courts impose a notice-pleading standard whereas we impose a fact-pleading standard. Compare *Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 605 (7th Cir. 1987) ("Fed. R. Civ. P. 8(a) permits notice pleading ***"), with *Grund v. Donegan*, 298 Ill. App. 3d 1034, 1039 (1998) ("Illinois is a fact-pleading jurisdiction"). "As a consequence, a plaintiff in federal court need not set out in detail the facts upon which his claim is based." *Redfield*, 818 F.2d at 605. Thus, the burden on the State may be heavier in this case than the burden was on the plaintiffs in the cases from other jurisdictions that are discussed below.

The primary difficulty in cases like this one lies in identifying the officer's actions and determining whether they were personal acts or acts of the corporation. As one court has explained:

> "The line between a personal act and an act that is purely an act of the corporation (or of some other employee) and so not imputed to the president or to other corporate officers is sometimes a fine one, but often it is clear on which side of the line a particular act falls. If an individual is hit by a negligently operated train, the railroad is liable in tort to him but the president of the railroad is not. Or rather, not usually; had the president been driving the train when it hit the plaintiff, or had been sitting beside the driver and ordered him to exceed the speed limit, he would be jointly liable with the railroad." *Browning-Ferris Industries of Illinois, Inc. v. Ter Maat*, 195 F.3d 953, 956 (7th Cir. 1999).

In these examples the determination of personal liability is obvious, but the situations are not always so clear-cut, especially in the environmental protection arena.

In *Sydney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 418 (7th Cir. 1994), the court reversed dismissal of a complaint brought against corporate officers, asserting liability under CERCLA. The court emphasized that direct, personal liability is different and distinct from liability resulting from piercing the corporate veil. *Pipefitters*, 25 F.3d at 420. The court found the allegations sufficient to state a claim for personal liability under CERCLA: "Pipefitters alleged not only that the Arst officers in question exercised management control over the company's operations, but also that they knowingly exercised direct and personal control over the handling of the hazardous substance at issue in this appeal." *Pipefitters*, 25 F.3d at 421. The court explained:

> "To survive a motion to dismiss a plaintiff must allege that persons associated with the corporation *directly* and *personally* engaged in conduct that led to the specific environmental damage at issue in the case. Without such direct, personal involvement, the corporation and not the associated individuals must be regarded as owning or operating the hazardous waste site in question. It would certainly be unreasonable to infer simply from general allegations of corporate ownership or operation of a waste site that individuals acting on the corporation's behalf are themselves liable. Thus, a plaintiff does not state a claim for owner or operator liability if she merely alleges that certain individuals had general corporate authority or served generally in a supervisory capacity. Active participation in, or exercise of specific control of, the activities in question must be shown." *Pipefitters*, 25 F.3d at 421-22.

Courts that have upheld liability have similarly required more than a showing of general corporate authority. In *Carter-Jones Lumber Co. v. Dixie Distributing Co.*, 166 F.3d 840, 846 (6th Cir. 1999), for example, the court recognized that a corporate officer could be liable for the corporation's CERCLA violations because the officer was "actively involved in the arrangements for disposal." The evidence showed that the officer and the corporation purchased 10 transformers containing polychlorinated biphenyls (PCBs), that the officer negotiated the purchase price and signed an affidavit in which he acknowledged the problem with PCB disposal, that the transformers were moved to property owned by the officer, that some of the transformers were sold by the corporation, that those same transformers were later sold to another buyer by the officer, that the officer was attempting to hide the transformers from the Ohio Environmental Protection Agency, and that the officer misstated to the Ohio Environmental Protection Agency the number of transformers he had. *Carter-Jones*, 166 F.3d at 844.

In *State ex rel. Webster v. Missouri Resource Recovery, Inc.*, 825 S.W.2d 916, 926 (Mo. App. 1992), the court reversed the dismissal of a corporate officer defendant, finding that he could be liable for the corporation's violation of the Missouri Hazardous Waste Management Law (Mo. Rev. Stat. § 260.350 (1986)), because the officer

> "was a 'hands-on' operator. He individually participated in and directed all the activities of the corporation. \*\*\* [H]e had responsibility for the day-to-day operation of the business. [His] decisions and his actions [were] the source of plaintiffs' charges against [the corporation]. He had the ability to control the activities of [the corporation] which gave rise to this lawsuit and he did control those activities."

Likewise, in *State v. Shore Realty Corp.*, 759 F.2d 1032, 1052 (2d Cir. 1985), the defendant officer was held liable where he was "in charge of the operation of the facility in question." In *United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 744 (8th Cir. 1986), the court found a corporate officer liable under CERCLA because "he personally participated in the wrongful conduct" by arranging for the transportation and disposal of hazardous substances on behalf of the corporation.

In *United States v. Carolina Transformer Co.*, 978 F.2d 832, 837 (4th Cir. 1992), the Court of Appeals for the Fourth Circuit found that a plaintiff need only show that the officer had the "authority to control" the facility, not necessarily that he did. Still, the officers' liability was based on more than the mere fact that they were corporate officers. One officer "acknowledged that he was 'in charge' of the company and that he was 'responsible' for what went on upon the company's property." *Carolina Transformer*, 978 F.2d at 837. The other officer "operated or otherwise controlled operations on the property in question," and his basic responsibilities included "everyday operations of the company, delegation of authority, [and] management of the company." *Carolina Transformer*, 978 F.2d at 837. And these were not "all of the many facts," which supported a finding of liability. *Carolina Transformer*, 978 F.2d at 837.

One case, perhaps more than any other, exemplifies that it is not a person's title as a corporate officer that creates liability. In *United States v. Gurley*, 43 F.3d 1188, 1194-95 (8th Cir. 1994), the court held that a defendant who was "not an officer, director, or shareholder" was appropriately found liable for corporate hazardous waste disposal activities in violation of CERCLA because the individual was the " 'director of operations' \*\*\* 'in control of the day to day operations of the plant' " and engaged in written communications with the Arkansas Department of Pollution Control and Ecology regarding the violations.

Applying rules similar to those applied in the above cases, some courts have found insufficient evidence to hold corporate officers liable. In *Riverside Market Development Corp. v. International Building Products, Inc.*, 931 F.2d 327, 330 (5th Cir. 1991), for example, the court upheld the grant of summary judgment in favor of an officer defendant because "[t]he plaintiffs *** failed to come forward with any evidence showing that [the officer] personally participated in any conduct that violated CERCLA." In *T.V. Spano Building Corp. v. Department of Natural Resources & Environmental Control*, 628 A.2d 53, 62 (Del. 1993), the court held that the officer was not personally liable for the corporation's improper disposal of hazardous wastes because while the officer "had broad, general authority for the Raintree project and direct knowledge of the disposal trenches," he "did not direct, control, approve, consent to, or ratify the decision to dispose of the construction waste."

From our analysis of *C.J.R.*, the other cases cited by the parties, and the Act itself, we conclude that in order to state a claim for personal liability against a corporate officer under the Act, a plaintiff must do more than allege corporate wrongdoing. Similarly, the plaintiff must allege more than that the corporate officer held a management position, had general corporate authority, or served in a supervisory capacity in order to establish individual liability under the Act. The plaintiff must allege facts establishing that the corporate officer had personal involvement or active participation in the acts resulting in liability, not just that he had personal involvement or active participation in the management of the corporation. Application of these principles in this case shows that the State has not pled a cause of action against Tang for individual liability.

■ The State has made conclusory allegations that Tang "caused or allowed" certain actions to occur in violation of the Act. The State, however, offers no explanation as to how Tang "caused or allowed" these violations to occur, except that he did so "as a part of his performance of, and as a direct result of, his duties as Chairman and Chief Executive Officer of P. Brothers LP, and because of his controlling ownership interest in both a limited partner and the general partner of P Brothers LP." In other words, the State is saying that because he was an officer and shareholder of the corporation, Tang is accountable for the corporation's actions. As noted above, this flies in the face of the purpose of creating corporate entities. To state a claim, the allegations must show that Tang was personally, as opposed to only in his corporate capacity, involved in the alleged violations. They fail to do so, despite the State's multiple opportunities to state its claims. Significantly, the State does not even allege that Tang had

knowledge of the wastes or the violations. The allegations merely state in conclusory fashion that Tang "conducted an automobile shredding operation at the site through the business entities" and inexplicably "caused or allowed" the violations to occur. These allegations are significantly deficient as compared to the allegations in *C.J.R.* and other cases finding individual liability. As pointed out above in *C.J.R.*, the corporate officer defendant actually "operated" the facility in question. In this case, for whatever reason, the chief operating officer of P Brothers LP was not made a party to this action. The allegations are conclusory and insufficient to state a claim for personal liability.

The State urges us to ignore the deficiencies in its pleadings because "the evidence to support [the] allegation[s] is principally within the defendant's knowledge and can be further developed through discovery." The State cites *John Burns Construction Co. v. City of Chicago*, 234 Ill. App. 3d 1027 (1992), *Christoffel v. Country Mutual Insurance Co.*, 183 Ill. App. 3d 32 (1989), and *Holton v. Resurrection Hospital*, 88 Ill. App. 3d 655 (1980). Those cases differ significantly from this case. In *Burns Construction*, the plaintiff argued on its motion for reconsideration that it needed to conduct discovery in order to make more specific allegations. *Burns Construction*, 234 Ill. App. 3d at 1033. In *Christoffel*, the missing information was a copy of the insurance policy, which policy the defendant insurer obviously had knowledge of. *Christoffel*, 183 Ill. App. 3d at 37. In *Holton*, the court found that the "defendant did not have to rely primarily on plaintiff's complaint to formulate an answer and prepare for trial." *Holton*, 88 Ill. App. 3d at 659. The defendant was a hospital that retained copies of treatment records, and one of the primary shortcomings of the complaint was that it failed to indicate the hospital employees who treated the deceased on June 29, 1974. *Holton*, 88 Ill. App. 3d at 657.

In this case, the State never petitioned the court to begin discovery. Instead, it continued to replead nearly identical conclusions without indicating to the trial court that its complaint might have benefitted from discovery. Further, the State has not, in its pleadings or in its appellate briefs, described any of the evidence that it believes is in Tang's possession. Nor is there any indication that Tang has any evidence that would be useful in answering the complaint. As they stand, the State's allegations are insufficient to apprise Tang of what acts he is being asked to defend. Under these circumstances, we cannot accept the State's claim. Dismissal was proper.

The State alternatively maintains that Tang is liable as a corporate officer because "the law imposes responsibility upon corporate agents who do not proactively work to prevent violations of statutes that [a]ffect the public's health and safety from occurring." In some jurisdic-

tions this is known as the "responsible corporate officer doctrine." See, *e.g., BEC Corp. v. Department of Environmental Protection*, 256 Conn. 602, 775 A.2d 928 (2001); *Commissioner, Department of Environmental Management v. RLG, Inc.*, 755 N.E.2d 556 (Ind. 2001). Tang argues that the State has waived this argument by not raising it in the trial court. We agree. See *Sparapany v. Rexall Corp.*, 249 Ill. App. 3d 388, 392 (1993) ("It is settled law in Illinois that a theory cannot be presented on review which was not presented in the trial court; any such theory not presented below is deemed waived"). Regardless, the responsible corporate officer doctrine requires specific allegations of corporate responsibility with regard to the wrongful acts, rather than just general allegations of corporate responsibility. See *United States v. Park*, 421 U.S. 658, 675, 44 L. Ed. 2d 489, 502-03, 95 S. Ct. 1903, 1913 (1975) ("[T]he main issue for determination was not respondent's position in the corporate hierarchy, but rather his accountability, because of the responsibility and authority of his position, for the conditions which gave rise to the charges against him"); *United States v. Dotterweich*, 320 U.S. 277, 284, 88 L. Ed. 48, 53, 64 S. Ct. 134, 138 (1943) ("The offense is committed *** by all who do have such a responsible share in the furtherance of the transaction which the statute outlaws ***"). Thus, consideration of the argument would lead us to the same conclusion: the allegations are insufficient to support the State's claims against Tang.

The State also argues that the trial court erred in holding that the Act does not authorize mandatory injunctive relief and that the court lacked authority to order Tang to remediate the property even though he has no legal interest in it. Because of our disposition on the liability issues, we need not address these relief issues.

For the foregoing reasons, we affirm the trial court's dismissal with prejudice of the State's second amended complaint.

Affirmed.

O'MALLEY, P.J., and McNULTY, J., concur.