NOS. 4-04-0558, 4-04-0868 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS ex rel.      ) Appeal from
LISA MADIGAN, Attorney General of the State of    ) Circuit Court of
Illinois,                                          ) Sangamon County
    Plaintiff-Appellee and     ) No. 00CH458
  Cross-Appellant,                       )
    v.  (No. 4-04-0558)        )
PETCO PETROLEUM CORPORATION, an Indiana            )
Corporation.                                       )
    Defendant-Appellant and    )
  Cross-Appellee,                         )
    and                         )
JAY DOUGLAS BERGMAN,                               )
    Defendant.                  )
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _             )
                                                   )
THE PEOPLE OF THE STATE OF ILLINOIS ex rel.        )
LISA MADIGAN, Attorney General of the State of     )
Illinois,                                          )
    Plaintiff-Appellant,       )
    v.  (No. 4-04-0868)        )
PETCO PETROLEUM CORPORATION, an Indiana            )
Corporation, and JAY DOUGLAS BERGMAN,              ) Honorable
    Defendants-Appellees.      ) Leslie J. Graves,
                                                   ) Judge Presiding.
_____

_____

   JUSTICE STEIGMANN delivered the opinion of the court:

   In December 2000, the State filed an amended two-count complaint against defendants,

Petco Petroleum Corporation and Jay Douglas Bergman, Petco's president, alleging multiple

violations of the Illinois Oil and Gas Act (225 ILCS 725/1 through 28.1 (West 2000)) and seeking

injunctive relief, as well as civil penalties.  In February 2004, the trial court entered a judgment

against Petco and Bergman and granted the State most of the relief it sought.  However, in May

2004, after considering Petco's and Bergman's motions to reconsider, the court amended its order

and (1) reversed its position on the question of Bergman's liability and (2) denied the State's request for a permanent injunction against Petco and Bergman. In June 2004, Petco filed a notice of appeal (case No. 4-04-0558), and the State filed a motion to reconsider the court's May 2004 order. In September 2004, the trial court denied the State's motion to reconsider. Later that same month, the State filed a notice of appeal (case No. 4-04-0868) and a notice of cross-appeal (case No. 4-04-0558).

Petco appeals, arguing that (1) this court lacks jurisdiction over the State's appeal and cross-appeal because the State's September 2004 notices of appeal and cross-appeal were not timely; and (2) the trial court erred by (a) determining that section 240.155 of Title 62 of the Illinois Administrative Code (62 Ill. Adm. Code §240.155 (Conway Greene CD-ROM April 2000)), under which the State brought its claims, was valid and (b) imposing on Petco a civil penalty totaling $168,000. The State appeals, arguing that (1) this court lacks jurisdiction over Petco's appeal because Petco's notice of appeal was premature; and (2) the trial court erred by (a) finding that Bergman was not personally liable as a responsible corporate officer, (b) declining to issue an injunction against Petco and Bergman, (c) failing to order Petco to post a $100,000 bond, and (d) failing to bar Petco and Bergman from acquiring additional drilling permits.

We conclude that (1) the State's notice of appeal was timely, (2) Petco's notice of appeal was premature, and (3) the trial court erred by declining to issue an injunction against Petco. Otherwise, we affirm the trial court's judgment. Accordingly, we dismiss Petco's appeal (case No. 4-04-0558) and the State's cross-appeal (case No. 4-04-0558), reverse the court's denial of the State's requested injunction against Petco (case No. 4-04-0868), remand for entry of the State's requested injunctive relief against Petco, and otherwise affirm the court's judgment.

I. BACKGROUND

In December 2000, the State filed an amended complaint for injunctive and other relief against Petco (count I) and Bergman (count II). The State alleged, in pertinent part, that in the preceding two years, Petco and Bergman were responsible for 168 documented spill events at the oil well sites for which Petco had permits issued by the Illinois Department of Natural Resources.

For relief, the State requested that the court (1) enter findings that (a) Petco and Bergman had violated provisions of the Oil and Gas Act (225 ILCS 725/1 through 28.1 (West 2000)) and the oil and gas regulations contained in the Administrative Code (62 Ill. Adm. Code §§240.10 through 240.1960 (Conway Greene CD-ROM April 2000)) by repeatedly allowing the improper disposal, release, or discharge of produced fluids, thus resulting in an imminent danger of substantial environmental harm or environmental damage to property and contamination of surface water or groundwater causing environmental damage, (b) a pattern of documented events involving improper disposal, release, or discharge of produced fluids occurred during the preceding two years, and (c) Petco and Bergman failed to operate in a prudent manner, pursuant to industry standards; (2) permanently enjoin Petco and Bergman from further violations of the Oil and Gas Act (225 ILCS 725/1 through 28.1 (West 2000)); (3) order Petco to submit a written oil and gas facilities operation maintenance plan that would insure compliance with the Department's rules; (4) order Petco to submit and maintain a $100,000 bond; (5) impose a civil penalty against Petco and Bergman totaling $223,000; (6) enjoin Petco and Bergman from acquiring additional permits to drill new oil or gas production wells until the Department released the $100,000 bond; (7) award the Department its costs; and (8) grant such other relief as the court deemed appropriate.

In May 2002, the State filed a motion for summary judgment as to count I, and in June 2002, Petco filed a motion for summary judgment, asserting, in pertinent part, that section 240.155 of Title 62 of the Administrative Code, under which the State brought its amended complaint, was invalid. In July 2002, the trial court granted the State's summary-judgment motion, upon finding that no genuine issue of material fact existed as to the specific allegations against Petco. The court also denied Petco's motion for summary judgment.

During October and December 2002, the trial court conducted a bench trial on (1) count II of the State's amended complaint and (2) the relief to be granted as to Petco and Bergman. (We will discuss the evidence in the pertinent analysis sections.) At the conclusion of the evidence, the court instructed the parties to file posttrial briefs in lieu of closing arguments. In January 2003, the State filed its posttrial brief, and in March 2003, Petco and Bergman filed their posttrial briefs.

In February 2004, the trial court entered a written order, in which it (1) found that Bergman was personally liable as a responsible corporate officer for Petco's violations of the Oil and Gas Act, (2) entered judgment in favor of the State and against Petco and Bergman, (3) permanently enjoined Petco and Bergman from committing further violations of the Oil and Gas Act and the Administrative Code, (4) ordered Petco to submit within 30 days a written oil and gas facilities operation maintenance plan to ensure compliance with the Department's rules, (5) denied the State's request for a $100,000 bond, (6) ordered Petco and Bergman to pay civil penalties totaling $168,000 under section 26 of the Oil and Gas Act (225 ILCS 725/26 (West 2000)), and (7) denied the State's request that Petco and Bergman be permanently restrained from seeking additional permits to drill new oil or gas production wells.

In March 2004, Petco and Bergman each filed a motion to reconsider the trial court's judgment. In April 2004, the State filed separate responses to Petco's and Bergman's motions to reconsider.

On May 26, 2004, the trial court entered a written amended order that modified its February 2004 order in the following respects: (1) it entered judgment against the State and in Bergman's favor on count II, (2) it denied the State's request for a permanent injunction against Petco and Bergman, and (3) it modified what Petco was required to include in the oil and gas facilities operation maintenance plan. In all other respects, the court affirmed its February 2004 order.

On June 22, 2004, the State filed separate motions to reconsider and strike the trial court's May 26, 2004, order as to Petco and Bergman. (The State's motion as to Petco is not in the record. However, Petco does not dispute that it was filed, and we are able to glean from Petco's July 2004 response what arguments were made in the State's motion. For simplicity, we will refer to the State's motions to reconsider as one motion unless the context requires otherwise.)

On June 25, 2004, Petco filed its notice of appeal (case No. 4-04-0558). In July 2004, Petco and Bergman filed responses to the State's June 22, 2004, motion to reconsider, and on September 8, 2004, the trial court denied the State's motion. On September 22, 2004, the State filed (1) a notice of appeal of the court's September 8, 2004, order (case No. 4-04-0868), and (2) a notice of

cross-appeal (case No. 4-04-0558). Petco did not file a new notice of appeal following the court's September 8, 2004, denial of the State's motion to reconsider.

II. ANALYSIS

A. Appellate Jurisdiction

1. <u>Supreme</u> <u>Court</u> <u>Rules</u> <u>274</u> and <u>303(a)</u>

While this appeal was pending, the Supreme Court of Illinois promulgated Supreme Court Rule 274, which provides, in pertinent part, as follows:

"A party may make only one postjudgment motion directed at a judgment order that is otherwise final. If a final judgment order is modified pursuant to a postjudgment motion, or if a different final judgment or order is subsequently entered, any party affected by the order may make one postjudgment motion directed at the superseding judgment or order. Until disposed, each timely postjudgment motion shall toll the finality and appealability of the judgment or order at which it is directed." Official Reports Advance Sheet No. 22 (October 26, 2005) R. 274, eff. January 1, 2006.

The committee comments to Rule 274 provide, in pertinent part, as follows:

"New Rule 274 clarifies the status of successive (superseding) final judgments, and of postjudgment motions directed at each final judgment, allowing one such motion per party per final judgment. Rule 274 further clarifies that a timely postjudgment motion directed at any final judgment, including a later superseding judgment, tolls the appeal time." Official Reports Advance Sheet No. 22 (October 26, 2005) R. 274, eff. January 1, 2006, Committee Comments.

Also while this appeal was pending, the supreme court amended Supreme Court Rule 303(a), which governs appeals from final judgments in civil cases, in pertinent part, as follows:

"(1) *** [T]he notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely ~~post-trial~~ <u>posttrial</u> motion directed against the judgment is filed, whether in a jury or a

⌄ 5 ⌄

nonjury case, within 30 days after the entry of the order disposing of the last pending ~~post judgment~~ <u>postjudgment</u> motion <u>directed</u> <u>against</u> <u>that</u> <u>judgment</u> <u>or</u> <u>order,</u> <u>irrespective</u> <u>of</u> <u>whether</u> <u>the</u> <u>circuit</u> <u>court</u> <u>had</u> <u>entered</u> <u>a</u> <u>series</u> <u>of</u> <u>final</u> <u>orders</u> <u>that</u> <u>were</u> <u>modified</u> <u>pursuant</u> <u>to</u> <u>postjudgment</u> <u>motions</u>. ***

      (2) When a timely ~~post-judgment~~ <u>postjudgment</u> motion has been filed by any party, whether in a jury case or a nonjury case, a notice of appeal filed before the entry of the order disposing of the last pending ~~post-judgment~~ <u>postjudgment</u> motion shall have no effect and shall be withdrawn by the party who filed it ***. *** No request for reconsideration of a ruling on a ~~post-judgment~~ <u>postjudgment</u> motion will toll the running of the time within which a notice of appeal must be filed under this rule." Official Reports Advance Sheet No. 22 (October 26, 2005) Rs. 303(a)(1) through (a)(2), eff. January 1, 2006.

We recognize that these rule changes do not take effect until January 1, 2006. In <u>People v. Atkins</u>, 217 Ill. 2d 66, 71-73, ___ N.E.2d ___, ___ (2005), the supreme court addressed the retroactivity of legislative amendments. The court held that when the legislature has not indicated whether an amendment should be applied retroactively, in accordance with section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2004)), procedural changes to statutes may be applied retroactively, while substantive changes may not. <u>Atkins</u>, 217 Ill. 2d at 71, ___ N.E.2d at ___. Although <u>Atkins</u> addressed legislative amendments, its holding applies equally to supreme court rules. See generally <u>People v. Roberts</u>, 214 Ill. 2d 106, 116, 824 N.E.2d 250, 256 (2005) ("The rules of statutory construction also apply to interpretation of *** supreme court rules").

The supreme court did not indicate that new Rule 274 or amended Rule 303 should be applied retroactively. Thus, in accordance with section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2004)), we must determine whether the changes are substantive or procedural. In <u>Rivard v. Chicago Fire Fighters Union, Local No. 2</u>, 122 Ill. 2d 303, 310-11, 522 N.E.2d 1195, 1199 (1988), the supreme court explained the difference between a substantive amendment and a procedural one:

"In general, procedural law is '"[t]hat which prescribes the method of enforcing rights or obtaining redress for their invasion; machinery for carrying on a suit."' [Citation.] Substantive law, in contrast, establishes the rights whose invasion may be redressed through a particular procedure. More specifically, procedure embraces 'pleading, evidence[,] and practice. Practice means those legal rules which direct the course of proceedings to bring parties into court and the course of the court after they are brought in.' [Citation.]."

Because new Rule 274 and amended Rule 303, which address multiple final orders and postjudgment motions, involve the "machinery for carrying on a suit," they are clearly procedural. Accordingly, we conclude that these rules apply retroactively to this case.

We further note that compliance with the deadlines for appeals set forth in Rule 303(a) is mandatory and jurisdictional. Berg v. White, 357 Ill. App. 3d 496, 499, 828 N.E.2d 889, 892 (2005).

### 2. Petco and Bergman's Motion To Dismiss the State's Appeal

Petco and Bergman have moved to dismiss the State's appeal in case No. 4-04-0868, arguing that (1) the State's June 22, 2004, motion to reconsider the trial court's May 26, 2004, order was a successive postjudgment motion that did not toll the time for filing a notice of appeal; and, therefore, (2) the State's notice of appeal was not timely filed within 30 days of the entry of the court's May 26, 2004, order. We disagree with Petco and Bergman and conclude that we have jurisdiction to hear the State's appeal.

In this case, the trial court issued a final judgment on February 24, 2004. Both Petco and Bergman filed timely postjudgment motions, and the State filed responses. On May 26, 2004, the trial court entered an amended order, in which it modified its February 2004 judgment in certain respects. Under the plain language of new Rule 274 and amended Rule 303(a)(1), the court's May 26, 2004, order was a modified final judgment, at which the State could direct another postjudgment motion. See Roberts, 214 Ill. 2d at 116, 824 N.E.2d at 256 (courts must interpret supreme court rules the same way they interpret statutes--that is, they must give the language of the rule its plain meaning). The State's June 22, 2004, motion was a "request for

reconsideration" of the court's May 26, 2004, amended order.  Thus, under Rules 274 and 303, the State's motion to reconsider tolled the running of the time for filing a notice of appeal.  Accordingly, the State's notice of appeal had to be filed within 30 days of the court's September 8, 2004, order disposing of the State's motion to reconsider, and the State's September 22, 2004, notice of appeal in case No. 4-04-0868 was so filed.  Accordingly, we have jurisdiction over the State's appeal in case No. 4-04-0868.

3. The State's Claim That This Court Lacks Jurisdiction Over Petco's Appeal

The State argues that this court lacks jurisdiction over Petco's appeal in case No. 4-04-0558.  Specifically, the State contends that because its June 22, 2004, motion to reconsider the trial court's May 26, 2004, amended order tolled the time for filing a notice of appeal, Petco's June 25, 2004, notice of appeal was premature and of "no effect."  We agree.

As earlier stated, amended Rule 303(a)(2) provides that when a party has filed a timely postjudgment motion, a notice of appeal filed before the entry of the order disposing of the last pending postjudgment motion shall have no effect.  Official Reports Advance Sheet No. 22 (October 26, 2005) R. 303(a)(2), eff. January 1, 2006.

In Chand v. Schlimme, 138 Ill. 2d 469, 474, 563 N.E.2d 441, 443 (1990), the plaintiff simultaneously filed a posttrial motion and a notice of appeal.  The Supreme Court of Illinois held that pursuant to Rule 303, a timely filed posttrial motion is not deemed "abandoned" by the filing of a notice of appeal.  Rather, the notice of appeal is of no effect.  Chand, 138 Ill. 2d at 478, 563 N.E.2d at 445.  The trial court retains jurisdiction and must rule on the posttrial motion, and if the plaintiff wishes to appeal that ruling, he must file a new notice of appeal within 30 days of the trial court's ruling on the posttrial motion.  Chand, 138 Ill. 2d at 477, 563 N.E.2d at 445.  Whether a plaintiff's timely filed posttrial motion is filed before, simultaneous to, or after the filing of the notice of appeal is of no moment.  As the supreme court stated, "even a notice of appeal that is filed before the filing of a post[]trial motion but which post[]trial motion is in fact later timely filed, has no effect."  Chand, 138 Ill. 2d at 478, 563 N.E.2d at 445.  See also In re Application of County Treasurer, 214 Ill. 2d 253, 261, 824 N.E.2d 614, 618 (2005) (a notice of

appeal is of no effect and must be withdrawn if a timely postjudgment motion was filed before or after the date on which the notice of appeal was filed).

Accordingly, we conclude that Petco's June 25, 2004, notice of appeal, which was filed while the State's June 22, 2004, motion to reconsider was pending, was premature and of "no effect." Petco failed to file a new notice of appeal following the trial court's September 8, 2004, denial of the State's motion to reconsider. We thus dismiss Petco's appeal in case No. 4-04-0558. As a result, we also dismiss the State's cross-appeal in that case.

### B. The State's Claim That the Trial Court Erred by Finding That Bergman Was Not Personally Liable

The State next argues that the trial court erred by finding that Bergman was not personally liable as a responsible corporate officer for Petco's violations of the Oil and Gas Act. We disagree.

### 1. Corporate Officer Liability and the Standard of Review

Corporate officers may be held liable for their personal involvement or active participation in violations of a statute. People ex rel. Burris v. C.J.R. Processing, Inc., 269 Ill. App. 3d 1013, 1018, 647 N.E.2d 1035, 1038 (1995); People ex rel. Ryan v. Agpro, Inc., 345 Ill. App. 3d 1011, 1028, 803 N.E.2d 1007, 1018 (2004), aff'd 214 Ill. 2d 222, 824 N.E.2d 270 (2005). However, it is not enough to prove that the corporate officer had personal involvement or active participation in the corporation's management. See People ex rel. Madigan v. Tang, 346 Ill. App. 3d 277, 805 N.E.2d 243 (2004) (noting that to state a claim for personal liability against a corporate officer, a plaintiff must allege more than that the corporate officer had personal involvement or active participation in the corporation's management). We will reverse a trial court's finding as to a corporate officer's personal liability if it was manifestly erroneous. Agpro, Inc., 345 Ill. App. 3d at 1028, 803 N.E.2d at 1018. A ruling is manifestly erroneous only "if it contains error that is clearly evident, plain, and indisputable." People v. Hughes, 329 Ill. App. 3d 322, 325, 767 N.E.2d 958, 960 (2002). Moreover, because the trial court was in the best position to weigh the evidence and determine the witnesses' credibility (see In re Marriage of Bates, 212 Ill. 2d 489, 515-16, 819 N.E.2d 714, 728 (2004)), we give that court's decision great deference.

## 2. The State's Claim That Bergman Could Be Found Liable for Petco's Violations

The State first contends that Bergman, as a corporate officer, could be held personally liable for Petco's violations of the Oil and Gas Act. In particular, the State asserts that a corporate officer is a "person" under the Oil and Gas Act. In support, the State points to the following: (1) section 11 of the Oil and Gas Act provides that any "person" may be subject to an injunction for violating the Oil and Gas Act's prohibition on "waste" (225 ILCS 725/11 (West 2000)); and (2) section 1 of the Oil and Gas Act provides that "person" means "any natural person, corporation, association, partnership, governmental agency or other legal entity, receiver, trustee, guardian, executor, administrator, fiduciary(,) or representative of any kind" (225 ILCS 725/1 (West 2000)).

We agree with the State that the language of section 1 appears broad enough to include corporate officers such as Bergman. See, for example, C.J.R. Processing, Inc., 269 Ill. App. 3d at 1015-16, 647 N.E.2d at 1037 (holding that the Illinois Environmental Protection Act's definition of "person" includes corporate officers; noting that the Act (1) defines "person" as including "any individual" and (2) does not exclude corporate officers). Nonetheless, we need not definitively resolve this issue because even accepting that Bergman could be personally liable for Petco's violations, we conclude that the trial court's finding that Bergman was not personally liable was not manifestly erroneous.

## 3. The Trial Court's Finding That Bergman Was Not Personally Liable

The State contends that the trial court's finding that defendant was not personally liable as a responsible corporate officer was manifestly erroneous. In particular, the State points to evidence that showed the following: (1) as Petco's president, Bergman exercised overall control over the company, including making significant financial decisions; (2) Bergman was directly involved in "many aspects of the oil production operation," including (a) reviewing bids for certain equipment (b) allocating money for special projects, such as upgrading an alarm system, and (c) signing checks to compensate landowners whose property was damaged by Petco's spills; (3) Bergman received reports on operational matters and occasionally visited the fields; (4) Bergman knew about many of the spills and leaks that occurred between 1998 and 2000 in the Louden and Dix fields; (5) in either

1997 or 1998, Bergman told one of his foremen not to report spills to the Department because Bergman did not believe Petco was being treated fairly; (6) Bergman "played an active part in defending Petco against hundreds of administrative charges that Petco violated the [Oil and Gas] Act"; and (7) Bergman failed to implement a policy of spending money on maintenance that would prevent leaks.

In response, Petco contends that the trial court's finding that defendant was not personally liable was not manifestly erroneous. In support, Petco cites the following evidence: (1) Bergman did not exercise day-to-day control of Petco's operations; (2) Bergman exercised nothing more than general corporation authority; (3) Bergman delegated a "vast amount" of decision-making to Petco's superintendents and field foremen and gave them authority to (a) make most hiring and firing decisions, (b) purchase all items used during the normal course of Petco operations, and (c) shut down wells and conduct spill-response activities; (4) Petco employees were not required to report spill events to Bergman and rarely did so; (5) on those occasions when Bergman made decisions on Petco's behalf, such as whether to drill new wells, he did so only after consulting with Petco's employees and contractors and relying upon their expertise; (6) Bergman had no personal involvement or active participation in the 168 spill events; (7) Bergman explained that (a) he told one of his foreman not to report spills after Bergman became upset about the Department's treatment of Petco and (b) within a short time, he reversed his position and told Petco employees to report all spills and cooperate with the Department; and (8) no evidence showed that Bergman misrepresented anything to the Department or knowingly engaged in conduct that resulted in spills. We agree with Petco.

Reviewing the record under the appropriate standard of review, we conclude that the trial court's finding that defendant was not personally liable as a responsible corporate officer did not contain error that was "clearly evident, plain, and indisputable."

## C. The State's Claim That the Trial Court Erred by Declining To Issue an Injunction Against Petco and Bergman

The State next argues that the trial court erred by declining to issue an injunction against Petco and Bergman. We agree with the State as to Petco only.

In People ex rel. Sherman v. Cryns, 203 Ill. 2d 264, 277, 786 N.E.2d 139, 149 (2003), the supreme court held that where--as here--"the State or a governmental agency is expressly authorized by statute to seek injunctive relief, the traditional equitable elements necessary to obtain an injunction need not be satisfied."  In such cases, the State or agency seeking the injunction need only prove that (1) the statute relied upon specifically allows for injunctive relief and (2) the statute was violated.  Cryns, 203 Ill. 2d at 277, 786 N.E.2d at 150.  The Cryns court also held that "[o]nce it has been established that a statute has been violated, no discretion is vested in the circuit court to refuse to grant the injunctive relief authorized by that statute."  Cryns, 203 Ill. 2d at 278, 786 N.E.2d at 150.  This principle of law is based on the presumption that public harm occurs when a statute is violated.  County of Kendall v. Rosenwinkel, 353 Ill. App. 3d 529, 539, 818 N.E.2d 425, 434 (2004).

Section 240.155(b) of Title 62 of the Administrative Code provides, in pertinent part, as follows:

"(b) In accordance with [s]ection 11 of the [Oil and Gas] Act, the Department[,] through the Attorney General[,] shall bring an action in the name of the People of the State of Illinois against [a person] *** to restrain such person from continuing such violation or from carrying out the threat of violation.  In such action the Department, in the name of the People of the State of Illinois, may obtain such injunctions, prohibitory and mandatory, including temporary restraining orders and preliminary injunctions, or other enforcement orders as the facts may warrant."  62 Ill. Adm. Code §240.155(b) (Conway Greene CD-ROM April 2000).

Section 11 of the Oil and Gas Act provides, in pertinent part, as follows:

"Whenever it shall appear that any person is violating or threatening to violate any provision of this Act, or any rule or final administrative order made hereunder, the Department, through the Attorney General, *** shall bring an action in the name of the People of the State of Illinois *** to restrain such person from continuing such violation or from carrying out the threat of violation.  In such action the Department, in the name of the People of the State of Illinois, may obtain such

injunctions, prohibitory and mandatory, including temporary restraining orders and preliminary injunctions, or other enforcement orders as the facts may warrant." 225 ILCS 725/11 (West 2000).

Because section 240.155 of Title 62 of the Administrative Code and section 11 of the Oil and Gas Act both specifically provide for injunctive relief for violations of the Oil and Gas Act, the State was required to prove only that the Act was violated in order to be entitled to injunctive relief. As earlier discussed, the trial court entered judgment in Bergman's favor on count II upon finding that he was not personally liable for Petco's violations. Because we concluded above that the court's finding was not manifestly erroneous, we further conclude that the court did not err by denying the State's request for injunctive relief as to Bergman. In addition, the court entered judgment against Petco on count I upon finding that Petco had violated the Oil and Gas Act. In its February 2004 order, the court granted the State's request for a permanent injunction against Petco. However, in its May 2004 amended order, the court changed its mind and denied the State's request for injunctive relief. Because the court did not alter its finding of liability as to Petco, it did not have discretion to refuse to grant the requested injunctive relief against Petco. Accordingly, we reverse the court's denial of the requested injunctive relief against Petco and remand with instructions to grant the State's requested permanent injunction against Petco.

In so concluding, we reject Petco's contention that Cryns is "not reliable authority" because the statute authorizing injunctive relief in that case does not contain the same language as section 11 of the Oil and Gas Act. We are not persuaded.

Cryns involved the Nursing and Advanced Practice Nursing Act, which provides, in pertinent part, as follows:

"If any person violates the provision of this Act, the Director may, in the name of the People of the State of Illinois, through the Attorney General of the State of Illinois *** petition for an order enjoining such violation or for an order enforcing compliance with this Act. Upon the filing of a verified petition in court, the court may issue a temporary restraining order *** and may preliminarily and permanently enjoin such

violation ***."  (Emphases added.)  225 ILCS 65/20-75(a) (West 2004).

The statute at issue in Cryns contains the same permissive-type language as contained in section 11 of the Oil and Gas Act.  We thus reject Petco's contention that Cryns is inapplicable on that basis.

We also reject Petco's contention that the "as the facts may warrant" language in section 11 "necessarily implies" that the trial court has discretion in deciding whether to grant injunctive relief. Instead, we agree with the State that section 11 authorizes the State to seek various types of injunctions, as well as "other enforcement orders as the facts may warrant."  225 ILCS 725/11 (West 2004).  Thus, the "as the facts may warrant" language addresses the broad range of enforcement orders available to the State, not the court's discretion whether to grant or deny requested relief.

Finally, we reject Petco's contention that this court's decision in People v. Staunton Landfill, Inc., 245 Ill. App. 3d 757, 614 N.E.2d 1286 (1993), requires us to reach a different result.  In that case, we recognized that section 42(e) of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1991, ch. 111 1/2, par. 1042(e) (now 415 ILCS 5/42(e) (West 2004))) allows the Attorney General to institute a civil action for an injunction to restrain violations of the Act.  Staunton Landfill, Inc., 245 Ill. App. 3d at 768, 614 N.E.2d at 1293.  We also acknowledged the line of appellate court cases holding that once a violation of a statute has been shown, the trial court lacks discretion to refuse to grant the requested injunction.  Nonetheless, this court held that a trial court does not forfeit "all discretion in the determination whether to grant or deny injunctive relief."  Staunton Landfill, Inc., 245 Ill. App. 3d at 768, 614 N.E.2d at 1293.  In light of the unequivocal holding of our supreme court in Cryns, we conclude that Cryns abrogated our holding in Staunton Landfill, Inc.

D. The State's Claim That the Trial Court Erred by Failing To Order Petco To Post a $100,000 Bond

The State also argues that the trial court abused its discretion by failing to order Petco to post a $100,000 bond.  Petco responds that (1) section 240.155 of Title 62 of the Administrative Code, under which the State brought its claims, is invalid because it (a) impermissibly and

simultaneously expands and limits section 11 of the Oil and Gas Act (225 ILCS 725/11 (West 2000)) and (b) is impermissibly vague so as to violate due process, (2) the bonding provision of section 240.155 is inapplicable, and (3) the court's decision was supported by the record. Although we disagree with Petco's first two contentions, we agree with the third and conclude that the court did not err by failing to order Petco and Bergman to post a $100,000 bond.

### 1. Petco's Claim That Section 240.155 Is Invalid

We review de novo Petco's challenge to the validity of section 240.155 of Title 62 of the Administrative Code. Mefford v. White, 331 Ill. App. 3d 167, 173, 770 N.E.2d 1251, 1256 (2002). Administrative regulations are construed under the same standards that govern the construction of statutes. Accordingly, we presume that administrative regulations are valid. People ex rel. Department of Labor v. MCC Home Health Care, Inc., 339 Ill. App. 3d 10, 21, 790 N.E.2d 38, 46 (2003).

### a. Petco's Claim That Section 240.155 of Title 62 of the Administrative Code Impermissibly Expands and Limits Section 11 of the Oil and Gas Act

Petco first argues that section 240.155 of Title 62 of the Administrative Code impermissibly and simultaneously expands and limits section 11 of the Oil and Gas Act. We disagree.

In Illinois RSA No. 3, Inc. v. Department of Central Management Services, 348 Ill. App. 3d 72, 76-77, 809 N.E.2d 137, 140 (2004), the First District described an administrative agency's authority to promulgate rules as follows:

"An administrative agency *** has only such authority as conferred by statute. [Citation.] An administrative rule is invalid if it conflicts with the language of the statute under which the rule was adopted. [Citation.] To determine whether an administrative rule conflicts with its enabling act, the court should 'ascertain and give effect to the intent of the legislature.' [Citation.] While administrative rules interpreting a statute serve as guides to legislative intent, the rules are binding on the court only to the extent that they follow the statute. [Citation.] 'Administrative rulings can neither limit, enlarge[,] nor amend the scope of the statute beyond the

clear import of the legislative language used.' [Citation.]"

Section 240.155 of Title 62 of the Administrative Code provides, in pertinent part, as follows:

"(b) In accordance with [s]ection 11 of the [Oil and Gas] Act, the Department[,] through the Attorney General[,] shall bring an action in the name of the People of the State of Illinois against such person in the circuit court of the county wherein any part of the land or any activity which is the subject matter of such action is located, or a final administrative order was entered, to restrain such person from continuing such violation or from carrying out the threat of violation. In such action the Department, in the name of the People of the State of Illinois, may obtain such injunctions, prohibitory and mandatory, including temporary restraining orders and preliminary injunctions, or other enforcement orders as the facts may warrant[,] including but not limited to:

(1) an assessment of a $1,000 civil penalty per documented event in the previous 2 years; and/or

(2) submission of a bond in accordance with [s]ubpart O; and/or

(3) denial of new drilling and/or operating permits.

(c) The provisions of this [s]ection apply to the following:

(1) violations of any requirement of the [Oil and Gas] Act that the Department determines creates a substantial and imminent danger to the health or safety of the public; or

(2) violations of the [Oil and Gas] Act that pose an imminent danger of substantial environmental harm or cause environmental damage to property or contamination of surface or ground waters of the State as a result of improper disposal, release, or discharge of produced fluid; or

(3) if the permittee has shown a pattern of documented

events involving improper disposal, release, or discharge of produced fluids within the previous 2 years from the date of the most recent event." 62 Ill. Adm. Code §§ 240.155(b), (c) (Conway Greene CD-ROM April 2000).

Section 11 of the Oil and Gas Act provides as follows:

"Whenever it shall appear that any person is violating or threatening to violate any provision of this Act, or any rule or final administrative order made hereunder, the Department, through the Attorney General, *** shall bring an action in the name of the People of the State of Illinois against such person in the circuit court of the county wherein any part of the land or any activity which is the subject matter of such action is located, or a final administrative order was entered, to restrain such person from continuing such violation or from carrying out the threat of violation. In such action the Department, in the name of the People of the State of Illinois, may obtain such injunctions, prohibitory and mandatory, including temporary restraining orders and preliminary injunctions, or other enforcement orders as the facts may warrant.

All remedies and penalties provided for in this Act shall be cumulative in effect and, accordingly, proceedings under this [s]ection are in addition to, and not in lieu of, other remedies and penalties provided for in this Act." 225 ILCS 725/11 (West 2000).

Petco contends that section 240.155 of Title 62 of the Administrative Code expands section 11 of the Oil and Gas Act because section 11 "simply allows [the Department] to seek injunctive relief when a violation has occurred or is threatened." Thus, according to Petco, where section 240.155 provides for the imposition of civil penalties, submission of a bond, and denial of new drilling and operating permits, it expands section 11 of the Oil and Gas Act beyond where the legislature intended it to go.

We disagree with Petco's narrow reading of section 11 of the Oil and Gas Act. The

language of that section clearly allows the Department to seek injunctive relief. However, it also allows the Department to seek "other enforcement orders as the facts may warrant." 225 ILCS 725/11 (West 2000). Civil penalties, submission of a bond, and denial of drilling permits are all valid enforcement mechanisms. See ESG Watts, Inc. v. Pollution Control Board, 282 Ill. App. 3d 43, 52, 668 N.E.2d 1015, 1021 (1996) ("Illinois courts often state that the primary purpose of civil penalties is to aid in enforcement" of the Illinois Environmental Protection Act). Because section 11 of the Oil and Gas Act allows for the imposition of enforcement orders other than injunctions, section 240.155 of Title 62 of the Administrative Code does not impermissibly expand that section by expressly allowing three alternative types of enforcement orders.

We further disagree with Petco's interpretation of the language "proceedings under this [s]ection are in addition to, and not in lieu of, other remedies and penalties provided for in [the Oil and Gas Act]" (225 ILCS 725/11 (West 2000)). According to Petco, this language provides that "[s]ection 11 of the Act cannot be used as a substitute for administrative remedies or the imposition of civil penalties already provided for in the Act." Petco's interpretation ignores the immediately preceding language of section 11: "All remedies and penalties provided for in this [a]ct shall be cumulative in effect ***." 225 ILCS 725/11 (West 2000). When read together, we interpret these phrases to mean that the remedies and penalties available under section 11 of the Oil and Gas Act do not exist in the place of other remedial and penalty provisions of the Oil and Gas Act; rather, they exist in addition thereto.

Petco also contends that section 240.155 of Title 62 of the Administrative Code impermissibly contracts section 11 of the Oil and Gas Act because subsection (c)(3) of section 240.155 limits to three the circumstances under which injunctive relief may be sought under section 11. We disagree.

The first sentence of subsection (c) of section 240.155 of Title 62 of the Administrative Code states: "The provisions of this [s]ection apply to the following." (Emphasis added.) 62 Ill. Adm. Code §240.155(c) (Conway Greene CD-ROM April 2000). Thus, subsection (c)(3) limits the application of section 240.155 of Title 62 of the Administrative Code to the three circumstances

described thereunder. It does not limit the application of section 11 of the Oil and Gas Act.

b. Petco's Claim That Section 240.155 of Title 62 of the Administrative Code Is Impermissibly Vague

Petco next contends that section 240.155 of Title 62 of the Administrative Code is impermissibly vague so as to violate due process. Specifically, Petco asserts that section 240.155 of Title 62 of the Administrative Code (1) contains several undefined terms, (2) leaves the regulated public unaware and uncertain of its obligations, and (3) provides no enforcement guidelines for the Department. We disagree.

To prevail on a vagueness challenge to a rule or statute that does not implicate first-amendment freedoms, a party must demonstrate that the rule was vague as applied to the conduct for which the complaining party is being prosecuted. People v. Jihan, 127 Ill. 2d 379, 385, 537 N.E.2d 751, 754 (1989); People v. Selby, 298 Ill. App. 3d 605, 612, 698 N.E.2d 1102, 1107 (1998) (applying Jihan to analysis of an administrative rule). That is, "the party must show that the [rule] did not provide clear notice that the party's conduct was prohibited." Jihan, 127 Ill. 2d at 385, 537 N.E.2d at 754. If a defendant's conduct clearly falls within the proscribed conduct, the defendant may be prosecuted under the statute in harmony with due process, even though the statute may be vague as to other conduct. People v. Jamesson, 329 Ill. App. 3d 446, 455, 768 N.E.2d 817, 825 (2002).

Petco contends that the following phrases within section 240.155 of Title 62 of the Administrative Code are impermissibly vague: (1) "pattern," (2) "documented event," (3) "imminent danger of substantial environmental harm," and (4) "environmental damage" (62 Ill. Adm. Code §240.155 (Conway Greene CD-ROM April 2000)). However, of these four phrases, the only one that Petco argues is vague as it applies to Petco's conduct in this case is the word "pattern." Thus, in accordance with the principles set forth above, we reject Petco's vagueness claims as to the other three phrases.

Petco contends that because the word "pattern" is not defined or explained anywhere in the Oil and Gas Act or the Department's rules, the regulated community cannot be aware of what

conduct is proscribed. More specifically, Petco asserts that (1) "pattern" is not defined in the Oil and Gas Act; (2) no discussion of the word "pattern" appears in any policy documents; and (3) the word "pattern" is not discussed in the published notice of the rule. Accordingly, Petco claims that it did not know that its conduct, which it describes as "significantly reducing" the occurrence of releases at its facilities, would result in an allegation of a "pattern of sanctionable conduct."

Subsection (c)(3) of section 240.155 of Title 62 of the Administrative Code provides that the provisions of that section will apply "if the permittee has shown a pattern of documented events involving improper disposal, release, or discharge of produced fluids within the previous 2 years from the date of the most recent event." 62 Ill. Adm. Code §240.155(c)(3) (Conway Greene CD-ROM April 2000).

We are not persuaded that Petco could not ascertain that it was experiencing a pattern of spill events or releases during the two years at issue. Given its plain and ordinary meaning in the context of section 240.155 of Title 62 of the Administrative Code, the word "pattern" refers to "frequent or widespread incidence." Merriam-Webster's Collegiate Dictionary 851 (10th ed. 2000). Even during Petco's best year at issue (2000), it had 65 spill events. That averages out to a minimum of five events per month or more than one per week throughout the entire year. No colorable argument can be made that the occurrence of five spill events per month does not constitute a pattern.

### 2. Petco's Claim That Section 240.155(b)(2) Is Inapplicable

Petco also contends that section 240.155(b)(2) (62 Ill. Adm. Code §240.155(b) (Conway Greene CD-ROM April 2000)) is inapplicable because (1) section 240.155(b)(2) permits the imposition of a bond "in accordance with [s]ubpart [O]," (2) subpart O applies only to those seeking to drill, deepen, convert, or operate new wells (62 Ill. Adm. Code §§240.500 through 240.1530 (Conway Greene CD-Rom April 2000)), and (3) Petco had not sought to drill, deepen, convert, or operate new wells. We disagree.

Section 240.155 of Title 62 of the Administrative Code provides that when the Department, through the State, brings an action to restrain an individual or entity from continuing a violation of

the act or from carrying out the threat of a violation, the Department "may obtain such injunctions, prohibitory and mandatory, including temporary restraining orders and preliminary injunctions, or other enforcement orders as the facts may warrant," including "submission of a bond in accordance with [s]ubpart [O]." 62 Ill. Adm. Code § 240.155(b) (Conway Greene CD ROM April 2000). Subpart O of the Administrative Code, which includes four sections, addresses the issue of bonds. Those sections deal with (1) bonds submitted in conjunction with an application to drill, deepen, convert, operate, or transfer a production or certain class well (62 Ill. Adm. Code §240.1500 (Conway Greene CD-ROM April 2000)); (2) definitions (62 Ill. Adm. Code §240.1510 (Conway Greene CD-ROM April 2000)); (3) the requirement of a bond, including the form and conditions (62 Ill. Adm. Code §240.1520 (Conway Greene CD-ROM April 2000)); and (4) the forfeiture of bonds (62 Ill. Adm. Code §§ 240.1530 (Conway Greene CD-ROM April 2000)).

We agree with the State that giving the language its plain and ordinary meaning, section 240.155(b) of Title 62 of the Administrative Code incorporates only the portions of subpart O that address the "submission" of a bond, such as the form and conditions of a bond, not the circumstances that trigger the submission of a bond under subpart O. See Caveney v. Bower, 207 Ill. 2d 82, 88, 797 N.E.2d 596, 599 (2003) ("The best indication of legislative intent is the statutory language, given its plain and ordinary meaning"). Section 240.155 applies when an individual or entity has violated the act and specifically sets forth enforcement orders to prevent continuing or threatened violations of the act. Petco's interpretation of section 240.155 would unduly restrict the reach of that section's enforcement mechanisms by limiting them to those individuals or entities (1) who violate the Act and (2) who file an application to drill, deepen, convert, operate, or transfer a production or certain class well. Accordingly, we conclude that the bonding provision of section 240.155 applies in this case.

### 3. The Trial Court's Failure To Order Petco To Post a $100,000 Bond

The State argues that the trial court abused its discretion by failing to order Petco to post a $100,000 bond. Specifically, the State contends that the bond was necessary (1) "to assure that Petco properly remediates the spills it[] continues to cause and to provide some financial protection

to the State should Petco fail in its obligations to properly plug abandoned or inactive wells" and (2) because the State "may be liable for costs incurred in plugging wells that Petco abandons or leaves inactive." In particular, the State points to the following: (1) Petco had been slow in cleaning up spills; (2) Department records showed that during 1999 and 2000, Petco had failed to remediate several spills in a timely manner; and (3) if Petco should fail to comply with its legal obligation to plug abandoned or inactive wells, "the State may have to use its limited resources to [do] what Petco should have done."

In response, Petco contends that (1) the State did not allege that Petco failed to clean up spills, only that Petco "was slow"; (2) nothing in the record indicates that Petco (a) failed to clean up spills or (b) cannot assure that future spills are cleaned up; (3) evidence showed that prior to 2000, Petco adequately responded to spills without the need for a bond; (4) a geologist who worked for the State acknowledged that (a) around 2000, Petco's response time to spills became "much better" and (b) since 2000, he had waited no longer than 20 minutes for Petco's representatives to respond to a spill; and (5) no evidence showed that Petco has failed to plug wells in Illinois. We agree with Petco.

Section 11 of the Oil and Gas Act provides that when the State proves violations of the act in a civil action, it "may obtain such injunctions, prohibitory and mandatory, including temporary restraining orders and preliminary injunctions, or other enforcement orders as the facts may warrant." 225 ILCS 725/11 (West 2004). In addition, section 240.155 of Title 62 of the Administrative Code provides that when the State brings an action to restrain an individual or entity from continuing a violation of the Act or from carrying out the threat of a violation, it "may obtain such injunctions, prohibitory and mandatory, including temporary restraining orders and preliminary injunctions, or other enforcement orders as the facts may warrant," including "submission of a bond in accordance with [s]ubpart [O]." 62 Ill. Adm. Code §240.155(b)(2) (Conway Greene CD ROM April 2000). Because the trial court was called upon to evaluate evidence and witness credibility to reach a fair and just result, we will review the court's decision under an abuse-of-discretion standard. See Save the Prairie Society v. Greene Development Group, Inc., 338 Ill. App. 3d 800, 803, 789 N.E.2d

389, 392 (2003) (reviewing the trial court's decision on the posting of a bond under an abuse-of-discretion standard); Cannon v. Whitman Corp., 212 Ill. App. 3d 79, 83, 569 N.E.2d 1114, 1117 (1991) (same). A trial court abuses its discretion only when its ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the court's view. Evitts v. DaimlerChrysler Motors Corp., 359 Ill. App. 3d 504, 513, 834 N.E.2d 942, 951 (2005).

Reviewing the record under the appropriate standard of review, we conclude that the trial court's decision declining to order Petco to post a $100,000 bond was neither clearly arbitrary, fanciful, nor unreasonable.

### E. The State's Claim That the Trial Court Erred by Failing To Bar Petco and Bergman From Acquiring New Drilling or Operating Permits

Last, the State argues that the trial court erred by failing to bar Petco and Bergman from acquiring new drilling or operating permits. Specifically, the State contends that "[t]he facts clearly warranted an order barring Petco and its president from acquiring new drilling or operating wells." In support, the State points to the following: (1) under Bergman, "Petco has developed a long, unfortunate record of spills and leaks"; (2) between June 1992 and May 2002, Petco operated approximately 3 1/2% of all oil wells in Illinois but had just over 30% of all releases in Illinois; and (3) the court found that Petco's 168 spill events constituted a pattern of documented events involving improper disposal, release, or discharge.

In response, Petco contends, in pertinent part, that the trial court did not err by denying the State's request that Petco and Bergman be barred from acquiring new permits, and points to the following evidence: (1) the decision whether to deny Petco and Bergman the availability of future permits should be based on post-1997 conduct, not conduct prior to that time; and (2) from 1997 through 2002, Petco reduced its spills by 88%, due to several proactive steps taken by Petco, including daily monitoring of equipment, implementation of programs to identify potential problems, and replacement of old pipes that were susceptible to corrosion. We agree with Petco.

As stated above, section 240.155 of Title 62 of the Administrative Code provides that

when the State brings an action to restrain an individual or entity from continuing a violation of the act or from carrying out the threat of a violation, it "may obtain such injunctions, prohibitory and mandatory, including temporary restraining orders and preliminary injunctions, or other enforcement orders as the facts may warrant." 62 Ill. Adm. Code §240.155(b) (Conway Greene CD ROM April 2000). One of the "other enforcement orders" is the "denial of new drilling and/or operating permits." 62 Ill. Adm. Code §240.155(b)(3) (Conway Greene CD ROM April 2000). Like the trial court's decision as to the submission of a bond, we will not reverse the court's decision as to whether to deny new drilling or operating permits absent an abuse of discretion. See Best v. Best, 358 Ill. App. 3d 1046, 1053-54, 832 N.E.2d 457, 463-64 (2005) (noting that the abuse-of-discretion standard applies when the trial court fashions "remedies in equity").

Reviewing the record under the appropriate standard of review, we conclude that the trial court's decision not to bar Petco and Bergman from acquiring new drilling or operating permits was neither clearly arbitrary, fanciful, nor unreasonable.

As a final matter, we note that the trial court's February 2004 order and May 2004 amended order were largely bereft of discussion and analysis. We recognize that the court was not required to set forth the bases or reasons for its rulings. However, given that this was a complicated case and it was likely that one or both parties would appeal, it would have been helpful had the court set forth the reasons for its rulings. See R&G, Inc. v. Midwest Region Foundation for Fair Contracting, Inc., 351 Ill. App. 3d 318, 325, 812 N.E.2d 1044, 1049 (2004) (in which this court urged trial courts to "state with clarity not only what action they are taking but why they are taking it"); Muck v. Van Bibber, 223 Ill. App. 3d 830, 836, 585 N.E.2d 1147, 1152 (1992) (in which this court discussed the difficulty faced by a reviewing court when the trial court provides no rationale for its ruling).

### III. CONCLUSION

For the reasons stated, we dismiss Petco's appeal and the State's cross-appeal in case No. 4-04-0558, we reverse the trial court's denial of the State's request for an injunction against Petco in case No. 4-40-0868, remand with instructions, and otherwise affirm the court's

judgment.

Petco's appeal and the State's cross-appeal dismissed; reversed in part and remanded; affirmed in part.

No. 4-04-0558, Appeal and cross-appeal dismissed.

No. 4-04-0868, Affirmed in part and reversed in part; cause remanded with directions.

McCULLOUGH, J., concurs.

COOK, J., specially concurs.

JUSTICE COOK, specially concurring:

I suggest that it is not necessary to discuss whether the amendments to Rule 274 and Rule 303(a) were retroactive. The amendments did not change the law; they only restated existing law; "where a trial court amends its initial final order, the clock is reset regarding the filing of posttrial motions attacking this new final judgment and, thus, the time is reset regarding the time for the filing of a notice of appeal." Gibson v. Belvidere National Bank & Trust Co., 326 Ill. App. 3d 45, 50, 759 N.E.2d 991, 995-96 (2001).

As to Petco's appeal, it is important to consider the details of the State's June 22, 2004, "request for reconsideration." A mere request for reconsideration does not extend the time for filing a notice of appeal. 155 Ill. 2d R. 303(a)(2). The State's June 22, 2004, postjudgment motion,

however, was not a mere request for reconsideration. Petco had filed a postjudgment motion after the original judgment was entered, and the original judgment was modified in Petco's favor on May 26, 2004. The State's June 22, 2004, motion accordingly was its "one postjudgment motion directed at the superseding judgment or order." Official Reports Advance Sheet No. 22 (October 26, 2005) R. 274, eff. January 1, 2006. If it had been the State which had filed the original postjudgment motion and the State had filed a "request for reconsideration" after its motion was denied, Petco's time for appeal would not have been extended, and Petco would have been required to ignore the State's June 22, 2004, motion and file its notice of appeal within 30 days of the modified order, as it did.